**Elizabeth SANDERS, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

**No. 55A04–0003–CR–99.**

Court of Appeals of Indiana.

Aug. 29, 2000.

Transfer Denied Nov. 2, 2000.

R. Stephen Donovan, Mooresville, Indiana, Attorney for Appellant.

Karen M. Freeman–Wilson, Attorney General of Indiana, Christopher L. Lafuse, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

## OPINION

NAJAM, Judge

### STATEMENT OF THE CASE

Elizabeth Sanders appeals her convictions of Involuntary Manslaughter, a Class C felony, and Neglect of a Dependent, as a Class B felony. Following a jury trial, the

trial court sentenced Sanders to eight years on Count I and twenty years on Count II, to be served consecutively, for a total executed sentence of twenty-eight years.

We affirm in part, reverse in part and remand with instructions.

## ISSUES

Sanders presents four issues for our review which we restate as:

1. Whether the trial court abused its discretion when it denied her motion for change of venue.
2. Whether the evidence is sufficient to support her conviction for neglect of a dependent, as a Class B felony.
3. Whether her convictions violate the Double Jeopardy Clause of the United States and Indiana Constitutions.
4. Whether her sentence is manifestly unreasonable.

## FACTS AND PROCEDURAL HISTORY

Sanders shared an apartment with her eighteen-month-old son Dylan. Sanders' boyfriend, Allen Roberts, spent most of his time with Sanders and Dylan. On Thursday, June 24, 1999, Roberts witnessed Sanders standing over Dylan's crib hitting Dylan as he cried. Sanders struck Dylan two or three times. The next night, Roberts noticed that Dylan was having trouble breathing and was gasping for air. Sanders told Roberts that Dylan had fallen from his crib. Roberts urged Sanders to take Dylan to the doctor, but Sanders refused. Dylan proceeded to vomit and choke throughout the night and would not let Roberts touch his stomach. The next afternoon, around 3:30 p.m., Roberts observed that Dylan was acting lethargic. After taking a nap, Dylan collapsed as he walked toward his toys. Roberts then insisted that Sanders seek medical attention for Dylan. Roberts carried Dylan to the car and attempted to breathe into the limp baby's mouth.

After Dylan arrived at an urgent care facility, doctors worked to keep Dylan alive until he could be transported by helicopter to Methodist Hospital. Doctors at Methodist performed emergency surgery on Dylan's abdomen. The surgeon discovered three quarts of fluid as well as air in Dylan's abdominal cavity caused by two holes in his small intestine. The surgeon also observed a large hematoma at the back of Dylan's abdomen, leading the surgeon to believe that a severe blow to the abdomen caused Dylan's injuries. Dylan died from peritonitis and shock shortly after surgery.

An autopsy later revealed at least three separate injuries to Dylan's abdomen caused by severe blunt force. The doctor who performed the autopsy testified that, in his opinion, the injuries were inflicted by an object the size of a fist. The doctor further concluded that the blows to Dylan's abdomen were not accidental.

The State charged Sanders with murder and neglect of a dependent resulting in serious bodily injury. The jury found Sanders guilty of the lesser included offense of involuntary manslaughter, a Class C felony, and neglect of a dependent, as a Class B felony. The trial judge imposed maximum and consecutive sentences totaling twenty-eight years imprisonment. Sanders now appeals.

## DISCUSSION AND DECISION

### Issue One: Change of Venue

Sanders contends that the trial court erred when it denied her motion for change of venue. We disagree.

A trial court's denial of a motion for change of venue will be reversed only for an abuse of discretion. *Elsten v. State,* 698 N.E.2d 292, 294 (Ind.1998). Sanders moved for a change of venue from the county due to what she described as "extraordinary and prejudicial pre-trial publicity." Record at 67. As noted by the State, Sanders' motion did not comply with

the provisions of Indiana Rule of Criminal Procedure 12. First, Sanders' motion was neither verified nor set forth facts in support of the constitutional or statutory basis or bases for the change of venue. *See* Ind.Crim. Rule 12(A). Additionally, Sanders' motion was untimely filed. Criminal Rule 12(D) specifically provides that no change of venue from the county shall be granted except within the time limits provided within the rule. Criminal Rule 12(D)(1) requires that, unless the movant alleges "subsequently discovered grounds" for the motion, a motion for change of venue from the county shall be filed within ten days after a plea of not guilty is entered. Although Sanders pleaded not guilty on July 15, 1999, her motion for change of venue was not filed until August 27, 1999. Because Sanders' motion failed to state an allegation of "subsequently discovered grounds," her motion was untimely.

■ These procedural defaults are fatal to Sanders' motion. Failure to follow the dictates of Criminal Rule 12 justifies the trial court's denial of Sanders' motion for change of venue from the county. *See Welch v. State*, 564 N.E.2d 525, 529 (Ind. Ct.App.1990) (citing *Petruso v. State*, 441 N.E.2d 446, 448 (Ind.1982)). The trial court did not abuse its discretion when it denied Sanders' motion.

### Issue Two: Sufficiency of the Evidence

■ We next address Sanders' claim that the evidence was insufficient to sustain her conviction for neglect of a dependent, as a Class B felony. When reviewing the sufficiency of the evidence, we neither reweigh the evidence nor determine the credibility of witnesses. *Fish v. State*, 710 N.E.2d 183, 184 (Ind.1999). Instead, we look to the evidence most favorable to the State and all of the reasonable inferences to be drawn from that evidence. *Bartlett v. State*, 711 N.E.2d 497, 499 (Ind. 1999). A conviction will be affirmed if the probative evidence and reasonable inferences to be drawn from the evidence could

have allowed a reasonable trier of fact to find the defendant guilty beyond a reasonable doubt. *Fish*, 710 N.E.2d at 184.

A person having the care of a dependent who knowingly or intentionally deprives the dependent of necessary support commits neglect of a dependent, a Class D felony. IND.CODE § 35–46–1–4(a)(3). The offense is enhanced to a Class B felony if it results in serious bodily injury. *Id.* In this case, death was the serious bodily injury alleged by the State to enhance Sanders' offense to a Class B felony.

■ The term "support" as used in the neglect statute is defined as food, clothing, shelter, or medical care. IND.CODE § 35–46–1–1. To prove that Sanders acted knowingly, the State had to show that she was "'subjectively aware of a high probability that [s]he placed the child in a dangerous situation.'" *See Smith v. State*, 718 N.E.2d 794, 806 (Ind.Ct.App.1999) (quoting *Thames v. State*, 653 N.E.2d 517, 517 (Ind.Ct.App.1995)), *trans. denied.*

Roberts testified that he witnessed Sanders standing over Dylan's crib hitting Dylan as he cried. The next night, the baby had difficulty breathing, was gasping for air, and proceeded to vomit and choke throughout the night. Roberts stated that he repeatedly told Sanders that she should take Dylan to the hospital but Sanders refused. The next day, Dylan acted lethargic and eventually collapsed while standing near his toys. By the time Sanders took Dylan to an urgent care facility, the baby was "deathly ill." Record at 1377. His condition was so serious that he needed to be transported to Methodist Hospital for emergency surgery. Dylan died shortly after surgery.

Despite Roberts' urging and visible signs of Dylan's severe distress, Sanders failed to seek necessary medical attention for Dylan until it was too late. Indeed, the record indicates that Sanders herself inflicted the injuries to Dylan's abdomen that required the treatment, which clearly supports the inference that Sanders was

subjectively aware that Dylan needed medical care. There is ample evidence to support Sanders' conviction of neglect of a dependent resulting in death.

### Issue Three: Double Jeopardy

 Sanders maintains that her convictions for involuntary manslaughter and neglect of a dependent, as a Class B felony, violate the Double Jeopardy Clause of the United States and the Indiana Constitutions. We first note that aside from her brief contention, Sanders neither cites the correct federal double jeopardy standard nor attempts to explain how her convictions violate the federal Double Jeopardy Clause. Consequently, Sanders has failed to present cogent argument and has waived our consideration of the federal double jeopardy issue. *See Ford v. State,* 718 N.E.2d 1104, 1107 n. 1 (Ind.1999) (citing Ind. Appellate Rule 8.3(A)(7)).

 Sanders likewise fails to analyze her double jeopardy claim adequately under the Indiana Constitution. However, because we find a constitutional violation and would have addressed the issue sua sponte even if it had not been raised, we will address Sanders' claim under Article I, Section 14 of the Indiana Constitution.

 Two or more offenses are the "same offense" in violation of Article I, Section 14, if with respect to either the statutory elements of the challenged crimes or the actual evidence used to convict, the essential elements of one challenged offense also establish the essential elements of another challenged offense. *Richardson v. State,* 717 N.E.2d 32, 49–50 (Ind.1999). Under the actual evidence test, dual convictions cannot stand if a defendant " 'demonstrate[s] a reasonable possibility that the evidentiary facts used by the fact-finder to establish elements of

one offense may also have been used to establish the essential elements of a second challenged offense.' " *Wise v. State,* 719 N.E.2d 1192, 1200–01 (Ind.1999) (quoting *Richardson,* 717 N.E.2d at 53).[1]

Recently, in *Hampton v. State,* 719 N.E.2d 803 (Ind.1999), our supreme court applied the *Richardson* actual evidence test and held that a defendant cannot be convicted of both murder and robbery, as a Class A felony, when both the murder conviction and the enhanced robbery conviction are based upon the same bodily injury to the same victim. *Id.* at 808; *accord Grace v. State,* 731 N.E.2d 442, 445–446 (Ind.2000). The court determined there was a reasonable possibility that the same evidence was used to establish both offenses when the defendant's murder and enhanced robbery convictions were based on the death of the same victim. *Id.* at 809.

Again, this year in *Logan v. State,* 729 N.E.2d 125 (Ind.2000), our supreme court concluded that the defendant's convictions for murder and Class A felony robbery violated the actual evidence test because the serious bodily injury alleged and proven by the State to support the robbery charge was the victim's death, the same fact used to convict the defendant of murder. *Id.* at 136. But in *Logan* the supreme court also observed that, even before *Richardson* and the actual evidence test, the court had held that where a single act forms the basis both for the upgrade of one conviction to a higher class of felony and conviction of a second offense, a defendant could not be twice sentenced for committing this single act, and that to do so would violate the prohibition against double jeopardy. *Id.* at 136 n. 2 (citing *Kingery v. State,* 659 N.E.2d 490, 495–96 (Ind. 1995)). Thus, the specific double jeopardy

1. Two offenses are also the "same offense" for purposes of Article I, Section 14 under the "statutory elements test," the object of which is to determine whether the essential elements of separate statutory crimes charged could be established hypothetically. *Richardson,* 717 N.E.2d at 49–50. The statutory elements test

is similar to the "same elements" test which comprises the federal double jeopardy analysis under *Blockburger. Id.* at 50 n. 41. Because of our disposition of this case, we need not address this component of the Indiana constitutional double jeopardy analysis.

rule which controls our decision today is well-settled Indiana law.

Here, there is more than a "reasonable possibility" that the same evidentiary facts used by the jury to establish the elements of one offense were also used to establish the elements of the second offense. The serious bodily injury alleged and proven by the State to enhance Sanders' neglect of a dependent conviction to a Class B felony was Dylan's death, the same fact used to convict Sanders of involuntary manslaughter. Sanders' convictions were based on the same bodily injury to the same victim and, thus, cannot stand together. *See Grace*, 731 N.E.2d at 446. While the State presented sufficient evidence to prove that Sanders committed both involuntary manslaughter and neglect of a dependent resulting in death, on these facts the Double Jeopardy Clause of the Indiana Constitution prohibits a conviction for both crimes. She cannot be convicted twice for one death.

■ When two convictions are found to contravene double jeopardy principles, a reviewing court may remedy the violation by reducing either conviction to a less serious form of the same offense if doing so will eliminate the violation. *Richardson*, 717 N.E.2d at 54. In the alternative, a reviewing court may vacate one of the convictions to eliminate a double jeopardy violation. *Id.; see also Jenkins v. State*, 726 N.E.2d 268, 271 (Ind.2000). In making that determination, we must be mindful of the penal consequences that the trial court found appropriate. *Richardson*, 717 N.E.2d at 54.

**2.** At the time Sanders committed her crimes, the lesser included offense of Class B felony neglect of a dependent was a Class D felony. Indiana Code Section 35–46–1–4 was subsequently revised, effective July 1, 1999, to include a Class C felony when the offense results in bodily injury rather than serious bodily injury. *See* P.L. 197–1999, Sec. 6.

**3.** If we were to reduce Sanders' neglect of a dependent conviction to a Class D felony,

In this case, Judge Gray originally imposed enhanced and consecutive sentences. In his sentencing statement, Judge Gray clearly articulated his rationale and intent that Sanders should serve the maximum term of imprisonment for Dylan's death. If we were to reduce Sanders' neglect conviction to the lesser included Class D felony,[2] the combined sentences for the Class C felony and the Class D felony would not yield the maximum penalty available under the law.[3] Accordingly, in order to eliminate the double jeopardy violation and honor Judge Gray's sentencing determination insofar as possible, we vacate Sanders' Class C felony involuntary manslaughter conviction, the conviction with the less severe penal consequences, and affirm Sanders' conviction and twenty-year sentence for neglect of a dependent, as a Class B felony.

**Issue Four: Sentence**

■ Finally, Sanders challenges the reasonableness of her original enhanced and consecutive sentences. Because we have vacated one of her convictions and sentences, we need only consider whether the remaining twenty-year sentence is manifestly unreasonable. Although we have the authority to review and revise sentences, we cannot say that a twenty-year enhanced sentence for neglect of a dependent resulting in death is manifestly unreasonable in light of the nature of the offense and the character of the offender. *See* Ind. Appellate Rule 17(B). The nature and circumstances of this crime against a defenseless child, her dependent, convince this court that Sanders' twenty-year sentence is entirely reasonable.

Sanders could only receive a maximum three-year sentence for that offense. *See* IND.CODE § 35–50–2–7. Coupled with the Class C involuntary manslaughter maximum term of eight years, Sanders' maximum enhanced sentence would be eleven years. Instead, by vacating the involuntary manslaughter conviction, we leave the Class B felony conviction and twenty-year sentence intact.

## CONCLUSION

The trial court did not abuse its discretion when it denied Sanders' motion for change of venue from the county. Because Sanders' convictions for both involuntary manslaughter and neglect of a dependent, under the circumstances presented, violate the Double Jeopardy Clause of the Indiana Constitution, we vacate the conviction and sentence for involuntary manslaughter, a Class C felony. We affirm the conviction and twenty-year sentence for neglect of a dependent, as a Class B felony. We remand to the trial court to issue a corrected judgment of conviction and sentencing order.

Affirmed in part, reversed in part and remanded with instructions.

FRIEDLANDER, J., and MATHIAS, J., concur.