**Jeffrey L. BRINGLE, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 41A04–0006–CR–240.

Court of Appeals of Indiana.

March 6, 2001.

Transfer Denied May 25, 2001.

822

Mark A. Ryan, Kokomo, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, James B. Martin, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

VAIDIK, Judge

### Case Summary

Jeffrey L. Bringle appeals his convictions of Refusal to Self Identify, a class C misdemeanor,[1] and Resisting Law Enforcement, a class A misdemeanor.[2] In particular, he claims that the trial court erred in refusing his tendered instructions and that his convictions were not supported by sufficient evidence. Because we find that the trial court did not err and that sufficient evidence was presented, we affirm.

### Facts and Procedural History

On August 23, 1999, Johnson County Sheriff's Deputy James Drake was patrolling U.S. 31, clocking vehicles with a radar gun to enforce speed limits. Deputy Drake clocked Bringle traveling 77 miles per hour in a 55 miles per hour zone. Deputy Drake pulled behind Bringle's vehicle, activated the emergency lights on his marked police vehicle, and pulled Bringle over to the side of the road.

Deputy Drake approached Bringle's vehicle, informed Bringle that he stopped him for exceeding the posted speed limit, and requested Bringle's driver's license and registration. In response to Deputy Drake's request, Bringle held his license up to the window. Deputy Drake asked Bringle to remove his license from his wallet and hand it to him. Bringle refused and, instead of handing Deputy Drake his driver's license, tried to hand him a copy of a statutory provision.[3] Deputy Drake warned Bringle that he could be arrested and taken to jail if he did not relinquish his license as requested. Bringle again refused to comply with Deputy Drake's request. Deputy Drake advised Bringle that he was going to call a tow truck, impound his car, and take him to jail.

Deputy Drake contacted his supervisor and asked for backup. His supervisor directed him to return to Bringle's vehicle and reiterate to Bringle that he could be arrested for not identifying himself. Deputy Drake did as he was ordered, but Bringle continued to refuse to hand over his driver's license.

Shortly thereafter, Sergeant Werden and Lieutenant McLaughlin arrived on scene to assist Deputy Drake. Sergeant Werden made an additional request for Bringle's license, informing Bringle that the license was needed so that a citation could be issued. Bringle told Sergeant Werden that he did not have to give up his license, claiming that the law did not require him to do so. Record at 400. Subsequently, Sergeant Werden made several requests for Bringle to get out of his car. Bringle remained in the car.

Due to Bringle's failure to comply with the requests for him to exit the vehicle, Lieutenant McLaughlin attempted to gain entry into Bringle's vehicle using a "slim

---

1. IND.CODE § 34–28–5–3.5.

2. IND.CODE § 35–44–3–3(a).

3. Bringle testified that the piece of paper he was trying to hand to the deputies was a copy of Indiana Code section 9–24–13–3. Record at 454.

jim". Record at 382. Bringle thwarted Lieutenant's McLaughlin's efforts by pressing down on the vehicle's lock button. Thereafter, Lieutenant McLaughlin placed a hose through the opening on the passenger side window and activated a pepper spray. Bringle started his vehicle and Deputy Drake placed "stop sticks" on the road in front of him. Record at 331–32.

Meanwhile, Sergeant Werden managed to gain entry into the vehicle. Bringle was ordered out of his vehicle, but he remained inside, clutching the steering wheel. Sergeant Werden and Deputy Drake forced Bringle's fingers away from the steering wheel and removed him from the vehicle. Once removed from the vehicle, Bringle continued to resist the deputies by trying to keep his wrists from them as they attempted to place him in the handcuffs. Bringle was placed on the ground in the emergency lane and handcuffed.

A jury convicted Bringle of Refusal to Identify Self, a class C misdemeanor, and Resisting Law Enforcement, a class A misdemeanor.

### Discussion and Decision

Bringle challenges his convictions for Refusing to Identify Self and Resisting Law Enforcement. He alleges two bases upon which his convictions should be overturned. First, he asserts that the trial court erred by refusing to give two of his tendered instructions. Second, he maintains that his convictions were not supported by sufficient evidence. We address each of these arguments in turn.

### I. Refusal to Give Tendered Instructions

Bringle contends that the trial court erred in refusing to give his tendered Final Instruction No. 8 and No. 9. In deciding whether a trial court erred in refusing to give tendered instructions, we give great deference to the trial court's decision. *State v. Snyder,* 732 N.E.2d 1240, 1244 (Ind.Ct.App.2000). It is firmly established that the manner of instructing the jury lies within the trial court's sound discretion. *Id.* In determining whether the trial court erroneously refused a tendered instruction, we consider (1) whether the tendered instruction correctly states the law, (2) whether there is evidence in the record to support giving the instruction, and (3) whether the substance of the instruction is covered by other instructions. *Id.* at 1244–45.

Bringle's tendered Final Instruction No. 8 and No. 9 were as follows:

*Defendant's Preliminary and Final Instruction No. 8*

The statute which sets forth the Duties of Licensees is statute IC 34–28–5–3 as follows:

IC 9–24–13

Chapter 13. Rights and Duties of Licensees and Permittees

IC 9–24–13–3

Sec. 3 An individual holding a permit or license issued under this article must have the permit or license in the individual's immediate possession when driving or operating a motor vehicle. The permittee or licensee shall display the license or permit upon demand of a court or a police officer authorized by law to enforce motor vehicle rules.

As added by P.L.2–1991, SEC. 12.

*Defendant's Preliminary and Final Instruction No. 9*

The definition of the following words apply where ever used during these proceedings:

Display: An opening or unfolding, exhibition, manifestation, ostentatious show, exhibition for effect, parade.

Deliver: Give, transfer; yield possession or control of; make or hand over; make delivery of.

Authority: For Display—20th *Century Lites v. Goodman*, ... [64 Cal.App.2d Supp. 938] 149 P.2d [88] 89, 91. Similar definition in Webster's Third New International Dictionary Unabridged. For Deliver—Webster's Third New International Dictionary Unabridged.

Record at 90.

■ Bringle argues that the refused instructions were: (1) correct statements of the law; (2) supported by sufficient evidence so as to necessitate the giving of the two instructions; and (3) not covered by any other instructions given by the trial court. While we agree with Bringle as to his third point, we are not convinced of the validity of his first two points. First, Bringle was charged under Indiana Code section 34–28–5–3.5, not under Indiana Code section 34–28–5–3 or Indiana Code section 9–24–13–3 as tendered Final Instruction No. 8 suggests. Thus, while tendered Final Instruction No. 8 may be a correct recitation of Indiana Code section 9–24–13–3, it was not a correct statement of the law to be applied by the jury. Because we find that Final Instruction No. 8 did not state the correct law to be applied, we conclude that the trial court did not err in refusing to charge the jury with tendered Final Instruction No. 8.

■ Having decided that Indiana Code section 34–28–5–3.5, not section 9–24–13–3, is the correct law to be applied, we must determine whether tendered Final Instruction No. 9, nonetheless, was an appropriate instruction. Bringle's tendered Final Instruction No. 9 was meant to assist the jury by defining the language, specifically the word "display," used in Indiana Code section 9–24–13–3.

Indiana Code section 34–28–5–3.5 does not use the word "display." IND.CODE § 34–28–5–3.5. Instead, that section requires a person "provide" a law enforcement with either the person's name, address, and date of birth or driver's license, if in the person's possession. IND.CODE § 34–28–5–3.5. Because the correct law to be applied in his case does not contain the word "display," it follows that there was no evidence in the record to support giving Bringle's tendered Final Instruction No. 9. Thus, Bringle's tendered Final Instruction No. 9 was not a proper instruction. Accordingly, we conclude that the trial court did not err in refusing to give either Tendered Final Instruction No. 8 or No. 9.

## II. Sufficiency of the Evidence

■ Bringle claims that neither of his convictions was supported by sufficient evidence. When reviewing the sufficiency of the evidence, we neither reweigh the evidence nor judge the credibility of witnesses. *Sanders v. State*, 734 N.E.2d 646, 650 (Ind.Ct.App.2000), *trans. denied.* Instead, we look to the evidence most favorable to the State and all of the reasonable inferences to be drawn from that evidence. *Id.* A conviction will be affirmed if the probative evidence and reasonable inferences to be drawn from the evidence could have allowed a reasonable trier of fact to find the defendant guilty beyond a reasonable doubt. *Id.*

### A. Refusal to Identify Self

■ Bringle contends that his conviction for Refusal to Identify Self was not supported by sufficient evidence. To convict Bringle of Refusal to Identify Self as a class C misdemeanor, the State was required to prove beyond a reasonable doubt that Bringle (1) knowingly or intentionally; (2) refused to *provide* a law enforcement officer who had stopped him for an infraction or ordinance violation, (3) with either

his name, address, and date of birth or his driver's license, if in his possession. IND. CODE § 34–28–5–3.5 (emphasis added). Bringle claims that the State failed to meet its burden. In particular, Bringle maintains that the State failed to proffer sufficient evidence that he refused to provide Deputy Drake and the others with his relevant information since he held his license up to the window for the deputies to see.

 Bringle suggests that his action of holding up his license to the window of his vehicle fulfilled his obligation under Indiana Code section 34–28–5–3.5. To answer the question of whether such action was enough to render Bringle in compliance with the statute, we must examine the language of the statute. When interpreting the meaning of a statute, this court is guided by well-established rules of statutory construction. *State v. Morris,* 732 N.E.2d 224, 228 (Ind.Ct.App.2000). A statute should be construed to ascertain and give effect to the expressed intention of the legislature by giving the words and phrases their common and ordinary meaning. *Id.*

 The common and ordinary meaning of "provide" is to supply for use. *See* WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY UNABRIDGED 1827 (1993). In fact, "provide" is often used interchangeably with the words "supply" or "furnish." *Id.* Giving the words and phrases their common and ordinary meaning, we find that Indiana Code section 34–28–5–3.5 requires that a person either supply a law enforcement officer with his name, address, and date of birth, or physically hand over his license, if it is in his possession.[4] Further

support for construing the statute to mean that a person must hand over his license upon an officer's request can be found by examining the justification for physically relinquishing the license from a law enforcement officer's perspective. When questioned by counsel why he asks for drivers to give him their licenses, Deputy Drake responded:

A: Well, there's a lot of counterfeit license [sic] out here. I need the information to fill out the uniform traffic ticket. I want to make sure, who I'm dealing with, uh, the driver's license has a picture I.D. on it and a date of birth, address, all the information that I need to perform my duties.

Q: Is there any particular reason you didn't want to look at his license through the window?

A: Well, traffic was heavy. We'd just buried an officer two months prior to that, I had to work the accident where the officer was killed out on the interstate and uh, every time I stop the [sic] car it still goes through my mind. I was trying to, uh, protect myself from being hit, uh, I couldn't pay attention, look at the driver's license through a window and watch up [sic] for my well being also.

Q: There any other reasons you ask for a license?

A: Well, you need to know if the license is authentic or not. You have to take and actually hold them, bend them to where you can see the State seal.

Record at 325–26.

Deputy Drake and the others made several requests for Bringle to hand over his

---

4. Because we find that Bringle provided neither his driver's license nor his name, address and date of birth to the deputies, we need not reach the issue of whether the legislature intended a person who is in possession of his

license, but instead chooses to give a law enforcement officer his name, address, and date of birth, would violate Indiana Code section 34–28–5–3.5.

 **827**

license. However, Bringle repeatedly refused to provide it to the deputies. While Bringle argues that he provided the deputies with the requisite information by displaying his license through the window, we find that such a display did not comply with the mandate of the statute.[5] Thus, we conclude that there was sufficient evidence for the jury to convict Bringle of Refusal to Identify Self.

## B. Resisting Law Enforcement

Finally, Bringle alleges that there was insufficient evidence to support a conviction for Resisting Law Enforcement. To convict Bringle of Resisting Law Enforcement as a class A misdemeanor, the State was required to prove beyond a reasonable doubt that Bringle (1) knowingly or intentionally; (2) forcibly resisted, obstructed, or interfered; (3) with a law enforcement officer; (4) while the officer was lawfully engaged in the execution of his duties as an officer. IND.CODE § 35–44–3–3(a).

Bringle contends that there was insufficient evidence to support the conviction for Resisting Law Enforcement because the underlying arrest was unlawful and the use of force by the deputies was unnecessary and excessive. We already determined above that Bringle committed the class C misdemeanor of Refusal to Identify Self. A law enforcement officer may arrest a person when the officer has probable cause to believe the person is committing or attempting to commit a misdemeanor in the officer's presence. IND.CODE § 35–33–1–1(a)(4). Moreover, Deputy Drake repeatedly warned Bringle that he could be arrested for failing to comply with the deputy's request for his driver's license.

Thus, the underlying arrest was lawful and we find, accordingly, that the deputies were lawfully engaged in the execution of their duties when they arrested Bringle.

Deputy Drake and Sergeant Werden both testified that Bringle knowingly and forcibly resisted, obstructed, and interfered with the deputies' attempts to place him under arrest. Record at 328, 332–33, 336–37, 383, 388–91, 394. Examples of his resistance included Bringle applying pressure to his vehicle's lock button to keep the deputies from effectuating a lawful arrest, gripping the steering wheel and not letting go of it when the deputies tried to remove him from his vehicle, and trying to keep his wrists from the deputies as they attempted to place handcuffs on him. Moreover, we find that the deputies only resorted to the use of pepper spray and force after Bringle repeatedly failed to adhere to the deputies' requests. Accordingly, we reject Bringle's contention that the deputies' use of force was unnecessary and excessive.

Because we find that the trial court did not err in refusing Bringle's tendered Final Instruction No. 8 and No. 9, and that both convictions were supported by sufficient evidence, we decline Bringle's invitation to set aside the jury's verdict.

Affirmed.

NAJAM and KIRSCH, JJ., concur.

---

**5.** Law enforcement officers face significant risks when conducting roadside traffic stops. Bringle's interpretation of the statute would increase those risks by requiring officers to stand along the roadside as traffic rushes by, peering through the window, in order to gather the information necessary for them to complete their job. The legislature could not have intended to expose officers to such additional risks.