Gregory JOHNSON, Appellant–
Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 49A02–1003–CR–375.

Court of Appeals of Indiana.

Sept. 7, 2010.

Evelyn Lecia Keaton, Indianapolis, IN, Attorney for Appellant.

## OPINION

NAJAM, Judge.

### STATEMENT OF THE CASE

Gregory Johnson appeals his conviction for Refusal to Identify Self, a Class C misdemeanor, following a bench trial. He presents two issues for our review:

1. Whether the State presented sufficient evidence to support his conviction.

2. Whether his misdemeanor conviction violates Article I, Section 16 of the Indiana Constitution.

We affirm.

### FACTS AND PROCEDURAL HISTORY

On February 19, 2009, at approximately 4:00 a.m., Johnson was operating a tractor-trailer on I–465 in Marion County. The roads were icy and there was a "slight dusting of snow on the roadway" at the time. Transcript at 4. There had been "several crashes and several slide-offs throughout the night" due to the weather conditions. *Id.* Other vehicles on I–465 in the vicinity of Johnson's vehicle were traveling between thirty and forty miles per hour. Johnson was traveling between fifty-five and sixty-three miles per hour when he passed Indiana State Police Officer Jeffrey Payne, who was driving his vehicle at approximate speeds of thirty to forty miles per hour.

Officer Payne activated his emergency lights and followed Johnson for approximately two miles before Johnson pulled to the side of the highway and stopped. Officer Payne exited his vehicle and entered the cab of Johnson's truck through the passenger-side door to talk to Johnson.[1] In a raised voice, Johnson demanded to know why Officer Payne had stopped him, and Johnson asserted that he had been driving fifty-five miles per hour in accordance with the posted speed limit. Officer Payne ignored Johnson's question and asked to see his driver's license. Johnson stated that "he wanted to know why he was being stopped first." *Id.* at 5. Officer Payne repeated his request to see Johnson's driver's license and assured Johnson that he would explain the reason for the

---

1. Officer Payne testified that it was his custom to enter the cab of tractor-trailers during traffic stops.

traffic stop once he received the license. Johnson asked a third time for an explanation for the stop and repeated his assertion that he was driving fifty-five miles per hour. Officer Payne again asked Johnson to produce his driver's license, told him that he would explain the reason for the stop, and advised Johnson that if he did not produce his license Officer Payne would arrest him for refusal to identify himself. Johnson refused the officer's request again, stating that "he was not going to provide [Officer Payne] with his driver's license" until the officer told him the reason for the stop. *Id.*

After Officer Payne asked for Johnson's driver's license a fourth time, Johnson "just stared" at Officer Payne and started dialing a number on his cell phone. *Id.* Officer Payne then exited the truck and walked around to the driver's side door, but Johnson had closed the window and locked the doors to the cab. Officer Payne asked Johnson several times to open the door and threatened to break the window if he did not comply. Officer Payne then walked to his police vehicle and moved it to the front of Johnson's truck so that he could not drive away. Officer Payne returned to the driver's side door of Johnson's truck and began banging on the window with his flashlight. Johnson continued to refuse to open the door. Officer Payne then returned to his

vehicle and contacted dispatch for assistance. When Officer Payne returned to Johnson's truck, Johnson exited the cab.[2]

Officer Payne instructed Johnson to turn around and put his hands on the cab, but Johnson did not comply. Officer Payne then forcibly placed Johnson in handcuffs. Officer Payne asked Johnson to identify himself, and Johnson did not reply. After Officer Payne placed Johnson inside his police vehicle, an officer with the Beech Grove police department arrived at the scene. Johnson instructed that police officer where in his cab he could find his driver's license, which the officer finally retrieved.

The State charged Johnson with resisting law enforcement and refusal to identify self. Following a bench trial, the trial court acquitted Johnson on the first count,[3] but found him guilty of refusal to identify. This appeal ensued.

## DISCUSSION AND DECISION

### Issue One: Sufficiency of the Evidence

Johnson contends that the State did not present sufficient evidence to support his conviction. When reviewing the claim of sufficiency of the evidence, we do not reweigh the evidence or judge the credibility of the witnesses. *Jones v. State,* 783 N.E.2d 1132, 1139 (Ind.2003).

2. Johnson had dialed 911 and reported that he had been pulled over by a police officer who was acting aggressively towards him. Johnson stated that he was "afraid for [his] life." Transcript at 11. Johnson was able to speak to another officer on the phone, who instructed him to exit the cab.

3. Officer Payne testified that Johnson "tried to pull his arm away" twice as Officer Payne tried to place handcuffs on his wrists. Transcript at 6. The trial court determined that that evidence was insufficient to support a conviction for resisting law enforcement. We note that, given our Supreme Court's holding

that "stiffening" of one's arms is sufficient to prove resisting law enforcement, the evidence here could have been sufficient to support the State's allegation. *See Graham v. State,* 903 N.E.2d 963, 966 (Ind.2009) (citing *Johnson v. State,* 833 N.E.2d 516 (Ind.Ct.App.2005), with approval and stating that evidence defendant stiffened his arms when officer attempted to place handcuffs on wrists sufficient to satisfy forcible resistance element of resisting law enforcement). But since Johnson was acquitted on that count, that issue is not before us on appeal.

We look only to the probative evidence supporting the judgment and the reasonable inferences therein to determine whether a reasonable trier of fact could conclude the defendant was guilty beyond a reasonable doubt. *Id.* If there is substantial evidence of probative value to support the conviction, it will not be set aside. *Id.*

▮ To prove refusal to identify self, the State was required to prove that Johnson knowingly or intentionally refused to provide either his name, address, and date of birth, or his driver's license to Officer Payne after he stopped Johnson for an infraction or violation of an ordinance. *See* Ind.Code § 34–28–5–3.5. On appeal, Johnson maintains that the State did not prove that he knowingly or intentionally refused to provide identification given that his failure to comply with Officer Payne's requests was a direct result of Officer Payne's "threatening behavior" towards Johnson. Brief of Appellant at 10. In essence, Johnson asks that we create an exception to the statute where a defendant has a reasonable fear for his safety which prevents his compliance. Further, Johnson contends that because the Beech Grove police officer ultimately retrieved his driver's license from the cab of his truck, he did, in fact, comply with the statute. We cannot agree.

This court analyzed the refusal to identify self statute in *Bringle v. State,* 745 N.E.2d 821 (Ind.Ct.App.2001), *trans. denied.* In *Bringle,* the defendant refused to give police officers his driver's license, but he displayed his license through his closed car window for the officers to see. The trial court entered judgment of conviction for refusal to identify self, and the defendant appealed, alleging that he had substantially complied with the statute. On appeal, we examined the language of the statute as follows:

When interpreting the meaning of a statute, this court is guided by well-established rules of statutory construction. A statute should be construed to ascertain and give effect to the expressed intention of the legislature by giving the words and phrases their common and ordinary meaning.

The common and ordinary meaning of "provide" is to supply for use. *See* WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY UNABRIDGED 1827 (1993). In fact, "provide" is often used interchangeably with the words "supply" or "furnish." *Id.* Giving the words and phrases their common and ordinary meaning, *we find that Indiana Code section 34–28–5–3.5 requires that a person either supply a law enforcement officer with his name, address, and date of birth, or physically hand over his license, if it is in his possession.* Further support for construing the statute to mean that a person must hand over his license upon an officer's request can be found by examining the justification for physically relinquishing the license from a law enforcement officer's perspective. When questioned by counsel why he asks for drivers to give him their licenses, Deputy Drake responded:

A: Well, there's a lot of counterfeit license [sic] out here. I need the information to fill out the uniform traffic ticket. I want to make sure, who I'm dealing with, uh, the driver's license has a picture I.D. on it and a date of birth, address, all the information that I need to perform my duties.

Q: Is there any particular reason you didn't want to look at his license through the window?

A: Well, traffic was heavy. We'd just buried an officer two months prior to that, I had to work the accident

where the officer was killed out on the interstate and uh, every time I stop the [sic] car it still goes through my mind. I was trying to, uh, protect myself from being hit, uh, I couldn't pay attention, look at the driver's license through a window and watch up [sic] for my well being also.

Q: There any other reasons you ask for a license?

A: Well, you need to know if the license is authentic or not. You have to take and actually hold them, bend them to where you can see the State seal.

Record at 325–26.

Deputy Drake and the others made several requests for Bringle to hand over his license. However, Bringle repeatedly refused to provide it to the deputies. While Bringle argues that he provided the deputies with the requisite information by displaying his license through the window, we find that such a display did not comply with the mandate of the statute. Thus, we conclude that there was sufficient evidence for the jury to convict Bringle of Refusal to Identify Self.

*Id.* at 826–27 (some citations omitted, footnotes omitted, emphasis added).

Here, Officer Payne asked Johnson to provide his driver's license, which was in his possession, at least four times, and Johnson refused each request. Johnson did not ever "physically hand over" his driver's license. *See id.* Instead, only after his arrest did Johnson instruct the Beech Grove officer where to find his driver's license. We hold that the State presented sufficient evidence to support his conviction. To the extent that Johnson contends that his fear for his safety prevented him from complying with the statute, Johnson asks us to reweigh the evidence and to create an exception to the statute, which we will not do.

**Issue Two: Article I, Section 16**

Johnson also contends that "[c]onviction on a misdemeanor where the law was ultimately complied with by the defendant driver during the traffic stop is disproportionate punishment for what actually occurred." Brief of Appellant at 23. For support, Johnson cites to Article I, Section 16 of the Indiana Constitution, which provides in relevant part that "[a]ll penalties shall be proportioned to the nature of the offense." Because we hold that Johnson did not "ultimately comply" with the statute, Johnson's contention on this issue is without merit. Further, we will only find a violation of Article I, Section 16 where the punishment is "grossly and unquestionably excessive." *See Clifton v. State,* 176 Ind.App. 395, 375 N.E.2d 1126, 1128 (1978) (quoting *Weems v. United States,* 217 U.S. 349, 30 S.Ct. 544, 54 L.Ed. 793 (1910)). We decline Johnson's invitation to so find here.

Affirmed.

BAKER, C.J., and MATHIAS, J., concur.