## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



ATTORNEY FOR APPELLANT

Marielena Duerring
South Bend, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Angela N. Sanchez
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Tyler Beathea,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

September 17, 2015

Court of Appeals Case No.
20A03-1411-CR-404

Appeal from the Elkhart Superior Court

The Honorable George W. Biddlecome, Judge

Trial Court Cause No.
20D03-1212-FB-122

**Mathias, Judge.**

[1]     Following a jury trial, Tyler Beathea ("Beathea") was convicted in Elkhart Superior Court of Class B felony battery resulting in serious bodily injury of a

child and Class D felony neglect of a dependent and sentenced to eighteen years to be served in the Indiana Department of Correction. Beathea now appeals and presents two issues for our review:

I.      Whether Beathea was denied a meaningful opportunity to present a complete defense to the battery charge when he was not permitted to introduce testimony from the emergency room doctor that the victim's injuries were not "serious" and;

II.      Whether the State presented sufficient evidence that the victim suffered serious bodily injury and that Beathea committed neglect of a dependent.

We affirm.

### Facts and Procedural History

[2]      On December 23, 2012, Brook Jackson ("Jackson") worked a double shift from 9:00 a.m. until 10:00 p.m. at a nearby gas station. Jackson wanted to finish up her last minute Christmas shopping with her brother after work. Tyler Beathea ("Beathea"), Jackson's boyfriend at the time, offered to take care of Jackson's three-year-old daughter, A.L., while she worked the double shift and finished her shopping. Beathea had watched A.L. on two prior occasions, and A.L. "liked him very much." Tr. p. 161.

[3]      Sometime that morning, A.L. wet the bed, and Beathea became infuriated. Beathea shouted profanities at A.L. and then pulled A.L.'s hair. He then picked her up by her hair, threw her in the air, dropped her on the bed, and struck her on the top of the head five times. Tr. pp. 328, 336-37. Beathea did not seek any medical attention for A.L. after the incident.

[4] Jackson arrived home around 12:45 a.m. on December 24, 2012. A.L. was asleep. Several minutes later, A.L. awoke, and Jackson noticed that A.L. had a large bump on the right side of her head and that her entire head was swollen. Jackson asked Beathea what happened to A.L., but he responded that he did not know. Jackson noticed that A.L. was quiet and would not speak to Beathea, which was "very abnormal" for her. Tr. pp. 168-69.

[5] Jackson took A.L. to the emergency room to be treated for her injuries, accompanied by her brother and Beathea. Over the next several hours at the hospital, A.L.'s injuries worsened. A.L. remained very quiet and winced when touched. The nurse assessed A.L.'s pain at a six out of ten on the flat score scale, a pain assessment for children. Her head turned pink beginning on the right side, but spread across her head, turning into a "purplish discoloration." Tr. p. 227.

[6] Doctors ordered a CT scan along with various other x-rays that determined A.L. suffered bleeding on several areas in the soft tissue of her scalp. The emergency room doctor diagnosed the injury as a "cephalohematoma," and the hospital administered Tylenol to A.L. The doctor instructed Jackson to give A.L. Tylenol or ibuprofen and use ice to reduce the swelling.

[7] The hospital staff suspected child abuse, and the emergency room nurse began the necessary paperwork for the referral to Child Protective Services. Jackson was cooperative, while Beathea refused to answer the nurse's questions and became flustered. A heated dispute arose in the room, and the nurse asked

Beathea to go to the waiting room. Instead of complying with the nurse's request, Beathea left the hospital. Approximately seven hours after arriving at the hospital, A.L. was released from the emergency room, and Jackson took her to Child Protective Services to be interviewed.

[8] On the evening of December 24, 2012, A.L.'s eyes became red and swollen with clear discharge. Jackson took her back to the hospital, and she was released the same day. A.L.'s eyes completely swelled shut on December 25, 2012, and A.L. was unable to open any of her Christmas gifts that day or participate in family festivities without great assistance. Her eyes remained swollen shut for two to three months, and it took nearly a year for A.L's swelling and bruising to completely heal. A.L. was apprehensive when Jackson brushed her hair, and her head remained tender at the time of trial.

[9] Beathea was charged with Class B felony battery resulting in serious bodily injury of a child and Class D felony neglect of a dependent. A jury trial was held on September 15-17, 2014. During trial, the emergency room doctor described A.L.'s injuries. On cross-examination, Beathea questioned the doctor about the degree of the injuries he found during A.L.'s examination. Beathea specifically asked the doctor to opine on whether A.L. suffered "serious" injuries based on the doctor's examination. The State objected that asking the doctor to determine whether the injury was "serious" called for a legal conclusion, because serious bodily injury was an element of the offense in this case. The trial court sustained the State's objection.

The jury found Beathea guilty as charged. The trial court ordered Beathea to serve eighteen years executed at the Department of Correction. Beathea now appeals.

## I. Meaningful Opportunity to Present a Complete Defense

Beathea argues that he was denied a meaningful opportunity to present a complete defense when the trial court sustained the State's objection to the emergency room doctor testifying to whether or not A.L.'s injuries were "serious." He contends that his defense was premised on whether the State could prove that he inflicted serious bodily injury, and his defense was eliminated because the trial court refused to allow the doctor to opine on whether A.L.'s injuries were "serious." Tr. pp. 256-57.

The decision to admit or exclude evidence is within the trial court's sound discretion, and that decision is "afforded a great deal of deference on appeal." *Hauk v. State*, 729 N.E.2d 994, 1001 (Ind. 2000) (quoting *Bacher v. State*, 686 N.E.2d 791, 793). We review the trial court's ruling on the admission or exclusion of evidence for an abuse of discretion. *Roche v. State*, 690 N.E.2d 1115, 1134 (Ind. 1997). We reverse only where the decision is clearly against the logic and effect of the facts and circumstances. *Joyner v. State*, 678 N.E.2d 386, 390 (Ind. 1997). Even if the trial court's decision was an abuse of discretion, we will not reverse if the admission constituted harmless error. *Fox v. State*, 717 N.E.2d 957, 966 (Ind. Ct. App. 1999).

[13]   Although a defendant's right to present a defense is of utmost importance, it is not absolute. *Parker v. State*, 965 N.E.2d 50, 53 (Ind. Ct. App. 2012). "The accused, as is required by the State must comply with established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence. *Id.*

[14]   Indiana Evidence Rule 704(b) provides:

> Witnesses may not testify to opinions concerning intent, guilt, or innocence in a criminal case; the truth or falsity of allegations; whether a witness has testified truthfully; or legal conclusions.

[15]   The trial court sustained the State's objection to the doctor's testimony and stated, "The witness cannot interpret whether or not the element of serious bodily injury is established or not established as a matter of opinion. And he may not render a [sic] opinion on whether or not the State has proved an element of the charge." Tr. p. 257. We agree. *See Schumm v. State*, 868 N.E.2d 1202, 1205 (Ind. Ct. App. 2007) (holding that a police officer who issued a citation to a driver for driving with improper headlights could not testify to whether the vehicle's taillights complied with department of transportation regulations because it was a legal conclusion).

[16]   Beathea asked the doctor whether A.L's injuries satisfied the definition of one of the essential elements of the charged crime, which would have amounted to the doctor opining on whether the State had proven Beathea guilty of battery resulting in serious bodily injury. The doctor was not aware that the term "serious" had a specialized legal meaning different than its vernacular meaning.

The trial court correctly classified the testimony as a legal conclusion and sustained the State's objection. *C.f. Torres v. County of Oakland*, 758 F.2d 147, 151 (6th Cir. 1985) (holding that if the terms used by the witness have a separate, distinct, and specialized meaning in the law different from the present in the vernacular, exclusion is appropriate).

[17] Even if the trial court had abused its discretion by excluding the testimony, any error would be harmless. "Trial court error is harmless if the probable impact of the error on the jury, in light of all of the evidence, is sufficiently minor such that it does not affect the substantial rights of the parties." *Bald v. State*, 766 N.E.2d 1170, 1173 (Ind. 2002) (quoting *Hauk v. State*, 729 N.E.2d 994, 1002 (Ind. 2000)). No evidence exists to show that the doctor knew that there was a legal definition related to "serious" injury, so the doctor's classification of A.L.'s injuries as "serious" would not have affected the jury's outcome in determining if her injuries met the legal definition of "serious." Further, the State presented testimony from several other witnesses who established the extent and seriousness of A.L.'s injuries. The jury properly considered this testimony to determine whether A.L.'s injuries were "serious."

## II. Sufficiency of the Evidence

[18] Beathea argues that neither of his convictions was supported by sufficient evidence. "Upon a challenge to the sufficiency of evidence to support a conviction, a reviewing court does not reweigh the evidence or judge the credibility of witnesses, and respects the jury's exclusive province to weigh

conflicting evidence. *Montgomery v. State*, 878 N.E.2d 262, 265 (Ind. Ct. App. 2007) (quoting *McHenry v. State*, 820 N.E.2d 124, 126 (Ind. 2005). We must consider only the probative evidence and reasonable inferences supporting the verdict. *Id.* We must affirm if the probative evidence and reasonable inferences drawn from the evidence could have allowed a reasonable trier of fact to find the defendant guilty beyond a reasonable doubt. *Id.*

A. *Serious Bodily Injury*

[19]     Beathea does not dispute that he battered A.L. but rather claims that the battery did not result in serious bodily injury.

[20]     Indiana Code section 35-42-2-1(a) (1) provides:

> A person who knowingly or intentionally touches another person in a rude, insolent, or angry manner commits battery, a Class B misdemeanor. However, the offense is: (4) a Class B felony if it results in serious bodily injury to a person less than fourteen (14) years of age and is committed by a person at least eighteen (18) years of age.

[21]     Under Indiana Code section 35-31.5-2-292,

> "serious bodily injury" is defined as bodily injury that causes: (1) serious permanent disfigurement; (2) unconsciousness; (3) extreme pain; (4) permanent or protracted loss or impairment of the function of a bodily member or organ; or (5) loss of a fetus.

[22]     Whether bodily injury is "serious" is a question of degree and, therefore, is appropriately reserved for the trier of fact. *Sutton v. State*, 714 N.E.2d 694, 697 (Ind. Ct. App. 1999). No bright line rule differentiates "bodily injury" from "serious bodily injury." *Davis v. State*, 813 N.E.2d 1176, 1178 (Ind. 2004). "Within the framework provided by the definition, it remains for the factfinder

to determine the question of degree: that the bodily injury is serious." *Ricks v. State*, 446 N.E.2d 648, 650-51 (Ind. Ct. App. 1983).

[23] Beathea argues that the State failed to prove serious bodily injury because, "…[t]he only testimony that referred to 'loss or impairment of the function of a bodily member or organ' was that concerning of the tissues around A.L.'s eyes. No medical testimony was given concerning whether the swelling caused a 'protracted loss or impairment' of A.L.'s vision. Nor was there any testimony that established that A.L.'s vision was impaired for a significant period of time." Appellant's Br. at 8-9.

[24] However, the State presented evidence at trial that could lead a jury to determine that A.L.'s injuries were serious due to extreme pain and permanent or protracted loss or impairment of the function of a bodily member or organ. The jury could reasonably conclude that A.L. suffered extreme pain when Beathea picked her up by the hair, threw her on the bed, and struck her in the head five times. Hours later, A.L.'s head and eyes became swollen and she cried and winced in pain after the incident occurred. The nurse in the emergency room assessed A.L.'s pain at a six out of ten and testified that she could tell by A.L's body language that she was in pain. Tr. p. 281. Further, A.L.'s injuries did not heal for nearly one year after the incident, and she still remained sensitive about others touching or combing her hair at the time of trial.

[25] The State's evidence also established that A.L.'s injuries were serious because she experienced protracted loss of use or impairment of her vision. In *Mendenhall v. State*, this court held that evidence was sufficient to show protracted loss of use of right eye where eye was swollen shut and victim felt pain all around that eye. *Mendenhall v. State*, 963 N.E.2d 553, 569 (Ind. Ct. App. 2012) (affirming that evidence was sufficient to establish that the victim suffered

serious bodily injury). After being struck by Beathea, A.L. suffered internal bleeding and a pooling of blood outside the skull, beneath the skin, which caused her eyes to swell completely shut. She was unable to open her eyes for two to three months and it took almost one year for all of the bruising and swelling to subside.

For all of these reasons, we conclude that the State presented sufficient evidence from which a reasonable jury could have concluded that Beathea inflicted serious bodily injury on A.L.

B. *Neglect of a Dependent*

Beathea also argues that the State failed to present sufficient evidence to prove that he committed Class D felony neglect of a dependent. Specifically, Beathea contends that no evidence was introduced to establish that his delay in reporting his conduct actually caused harm to A.L. Appellant's Br. at 11.

Indiana Code section 35-46-1-4 (a)(1) provides,

> a person having the care of a dependent, whether assumed voluntarily or because of a legal obligation, who knowingly or intentionally places the dependent in a situation that endangers the dependent's life or health commits neglect of a dependent, a Class D felony.

A person knowingly commits neglect of a child when he is "subjectively aware of a high probability that he placed the dependent in a dangerous situation." *Sanders v. State*, 734 N.E.2d 646, 650 (Ind. Ct. App. 2000). Because such a finding requires one to resort to inferential reasoning to ascertain the defendant's mental state, the appellate courts must look to all the surrounding circumstances of a case to determine if a guilty verdict is proper. *McMichael v.*

*State,* 471 N.E.2d 726, 731 (Ind. App. Ct. 1984) (citing *Perkins v. State*, 392 N.E.2d 490, 495 (Ind. Ct. App. 1979)).

[30]    At trial, the State presented testimony that Beathea endangered A.L.'s health by failing to seek medical attention after he caused her injury and by refusing to tell the doctors, nurses, or anyone else how A.L. was injured until after she received medical treatment. A jury could reasonably conclude that Beathea knew that A.L. needed medical attention after he injured her and that by failing to help her seek treatment, he endangered her health. The State's evidence showed that Beathea struck A.L. numerous times in the morning sometime after she wet the bed. A.L. remained alone with Beathea for another twelve to sixteen hours without receiving any medical care until her mother returned at nearly 1:00 a.m. the next day.

[31]    A reasonable person in Beathea's position as A.L.'s caregiver would have concluded that a three year old who had been picked up by her hair, dropped, and struck several times in the head would need medical attention. Further, during this time period and before Jackson returned, A.L.'s head began swelling, which should have alerted Beathea that A.L. required medical attention. When Jackson arrived home, she noticed the bump and swelling on A.L.'s head and immediately sought medical care for her daughter, as any reasonable person would do. Beathea should have been aware of a high probability that he placed A.L. in a dangerous situation. *Sanders, supra.*

[32]    Beathea further argues that there is a lack of testimony that A.L.'s life or health was subjected to an actual and appreciable danger due to Beathea's initial denial of responsibility or any speculated "delay" in treatment. Appellant's Br. at 10. Thankfully, A.L. did not suffer more serious consequences from her injuries, but her symptoms were real and appreciable dangers that required a medical evaluation. A.L. suffered multiple blows to the head and swelling,

which presented a risk for fracture or potential bleeding in the brain. Medical attention was therefore necessary to determine the extent of her injuries and to order appropriate treatment. *See Sample v. State*, 601 N.E.2d 457, 460 (Ind. Ct. App. 1992) (citing *Johnson v. State*, 555 N.E.2d 1362, 1366 (Ind. Ct. App. 1990)). (The State must prove that the actor subjected the dependent to a danger that was actual and appreciable, but this does not mean that a delay in seeking treatment must actually result in injury to dependent).

[33] For all these reasons, we conclude that the State presented sufficient evidence at trial from which a reasonable jury could have concluded that Beathea committed Class D felony neglect of a dependent.

## Conclusion

[34] The trial court did not abuse its discretion in excluding the emergency room doctor's testimony regarding whether A.L.'s injuries were serious because testimony was an inadmissible legal conclusion under Indiana Evidence Rule 704(b). Further, the State presented sufficient evidence to support Beathea's Class B felony battery resulting in serious bodily injury of a child and Class D felony neglect of a dependent.

[35] Affirmed.

Baker, J., and Bailey, J., concur.