## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

May 31 2016, 7:40 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Ruth Johnson
Patricia Caress McMath
Marion County Public Defender Agency
Appellate Division
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Paula J. Beller
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Trevor Rujuwa,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

May 31, 2016

Court of Appeals Case No.
49A02-1509-CR-1437

Appeal from the
Marion Superior Court

The Honorable
Marshelle D. Broadwell,
Commissioner
The Honorable
Christina R. Klineman, Judge

Trial Court Cause No.
49G17-1501-F6-2122

**Kirsch, Judge.**

[1] Following a bench trial, Trevor Rujuwa ("Rujuwa") was found guilty of three counts of Level 6 felony neglect of a dependent,[1] which were reduced to Class A misdemeanors. He appeals and raises the following restated issued: whether the State presented sufficient evidence that Rujuwa placed his children in a situation that endangered their health.

[2] We affirm.

## Facts and Procedural History

[3] In January 2015, Rujuwa and his wife Danielle ("Danielle") had been married for ten years and were the parents of five children. On the morning of January 16, Danielle woke up the parties' two school-aged children up and got them on the bus for school. She then left by cab at about 7:30 a.m. to pick up her paycheck from work and attend a doctor's appointment. When she left the residence, Rujuwa was asleep in a bedroom, and the three youngest children were at home, asleep in Danielle's bed. One child was four years old, and the other two were one-year-old twins.

[4] Later that afternoon, the apartment complex's maintenance person Earnest Williams ("Williams") stopped at the apartment to check for occupancy, and he found the three children and believed that they were alone. Therefore, he or someone from the complex contacted the police. Indianapolis Metropolitan

---

[1] *See*. Ind. Code § 35-46-1-4(a)(1).

Police Department Officers Stephen Jones and Nicholas Gallico were dispatched to the apartment for a welfare check on the children. The apartment's door was open when police arrived, and Officer Jones observed Williams and one of the children in the living room area. No parent came to the door. Based on what he had been told and what he saw, Officer Jones believed the children were unattended, and the Department of Child Services ("DCS") was contacted.

[5] Near this time, Danielle returned home and found the police and Williams at her apartment. Once inside the apartment, police discovered trash, old food, dirty diapers, broken toys, and clothes strewn throughout the apartment. In one room, a garbage can or box was overflowing with trash, including dirty diapers, at least one of which was open with exposed feces. A large knife was on the kitchen counter, and dirty dishes were in the sink and on the counters. In another room, a box spring for a bed was leaning against a wall, and in another room there was a partially broken crib. Soon thereafter, DCS representative Scott Amstutz ("Amstutz") arrived and walked through the residence. He met with the officers, employees of the complex, as well as Rujuwa, Danielle, and the five children.

[6] Five days later, the State charged Rujuwa with three counts of Level 6 felony neglect of a dependent. The charges alleged that, on or about January 16, 2015, Rujuwa "did knowingly place [the three children] in a situation that endangered [their] life or health," by leaving the children "unsupervised and/or . . . in

unsanitary living conditions." *Appellant's App*. at 21-22. Rujuwa waived his right to a jury trial, and the matter proceeded to bench trial in August 2015.

[7] At trial, Danielle testified that, during the month of January 2015, Rujuwa did not always stay at the family's home. She explained that sometimes he would be gone for a number of days, but would "pop in and out" to sleep or change clothes.[2] *Tr.* at 13. In the early morning hours of January 16, Danielle saw Rujuwa enter the home, but she did not have a conversation with him. He went to sleep in the bedroom with the two school-aged children. When Danielle woke the two children for school, she saw Rujuwa asleep in the room and believed he was there when she left. The State presented Danielle with eighty-two pictures that police had taken of the inside of the apartment as they had found it on January 16, and the pictures were admitted into evidence. Danielle testified that the condition of the home as seen in the pictures was the same as it had been when she left in the morning that day. She explained that she had not had an opportunity to clean the apartment in at least two weeks and that Rujuwa did not assist her with tasks around the home.

[8] Officer Jones testified that, based on his observations while he was in the hallway looking through the open apartment door, he believed the children were unattended and were in danger, given their young age. He noted that the

_____

[2] She assumed Rujuwa was staying with someone else, but she did not know where or with whom Rujuwa was staying.

child he observed appeared to him to be two to three years old, wearing pants, but no shirt.

[9] Following the closing of evidence, Rujuwa moved for an Indiana Trial Rule 41(b) dismissal of the three counts, but the trial court denied his motion. After hearing final argument, the trial court agreed with Rujuwa that the State had failed to prove that Rujuwa endangered the life or health of the children by leaving them unattended or unsupervised. However, the court determined that the State met its burden of showing that Rujuwa placed the children in unsanitary living conditions that endangered their health.[3] *Tr.* at 47, 55. The trial court proceeded to sentencing, and Rujuwa testified that during the course of proceedings, he and Danielle completed the required DCS services, the children had been returned home, and the DCS case was closed. The State advised the trial court that Rujuwa was eligible for alternative misdemeanor sentencing, and the trial court entered three Class A misdemeanor convictions. It sentenced Rujuwa to three concurrent terms of eighteen days, which were satisfied by time served, and ordered no probation. Rujuwa now appeals.

---

[3] The court reminded Rujuwa that even if he was not at the home every day, he was still the parent of the children, and thus responsible for them, and he could not avoid that responsibility by only being present at the home on some days. The trial court expressed disapproval that Danielle was not also charged, opining that "she should have been." *Tr.* at 57.

# Discussion and Decision

[10]    Rujuwa contends that the State presented insufficient evidence to support his convictions.  In reviewing a sufficiency of the evidence claim, we do not reweigh the evidence or assess the credibility of witnesses.  *Cleasant v. State*, 779 N.E.2d 1260, 1262 (Ind. Ct. App. 2002).  Rather, we look to the evidence and reasonable inferences drawn therefrom that support the verdict and will affirm the conviction if there is probative evidence from which a reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt.  *Id.*

[11]    To prove the offense of neglect of a dependent as charged, the State was required to show that Rujuwa knowingly placed his dependents in a situation that endangered their life or health.  Ind. Code § 35-46-1-4(a)(1).  In this case, the State's charging information alleged that Rujuwa knowingly placed his three dependent children in a situation that endangered their lives or health by leaving them "unsupervised and/or . . . in unsanitary living conditions." *Appellant's App*. at 21-22.  The trial court determined that the State failed to meet its burden with regard to the allegation that the children were unsupervised, which left only the allegation that concerned unsanitary living conditions.  As to those conditions, the trial court found that the children's health, but not their lives, was endangered by the living conditions in the apartment.

[12]    On appeal, Rujuwa argues that the evidence was insufficient to prove that he knowingly placed the children in a situation that endangered their health.  He concedes that there was one box of trash that was overflowing with, among

other things, dirty diapers, but he maintains that the apartment "was mostly just messy with clothes, toys, and other belongings strewn about," and that these conditions did not endanger the children. *Appellant's Br*. at 6. His position is, in effect, that the conditions were not "truly deplorable and filthy" enough to support the conviction. *Id*. at 9.

[13] While Officer Jones testified that the apartment was in disarray, the bulk of the evidence concerning the specific conditions in the home was presented by way of the eighty-two pictures taken by police and which captured the conditions of the residence at the time that the police were dispatched to "check welfare of children" that were reported as being unattended. *Tr*. at 26. The trial court reviewed the photographs, and it identified a number of specific items that it found posed a recognizable danger to small children such as a broken bed, cords on the floor, broken toys throughout the rooms, and a box spring meant to be used for a bed that was leaning precariously against a wall. It found that other items such as the overflowing trashcan, exposed feces, dirty dishes on the floor, including chicken bones, were unsanitary, dangerous, and endangered the children's health. The trial court recognized that even a "super messy" room "doesn't necessarily endanger" children, but in this case the children "could be hurt very badly" by some of the items shown in the pictures. *Id*. at 47-48. We agree. Used diapers appear on the floor throughout various rooms. *State's Exs.* 6, 24, 25, 28, 34, 50. In one room, broken toys, clothing, and a toppled-over wooden headboard are strewn atop a mattress that was on the floor. *State's Exs.* 14, 19, 64. In another room, a large metal rack is leaning against a wall next to

mattresses on the floor. *State's Ex.* 30. The children at issue were old enough to walk around and encounter the dangerous and unsanitary items, and, as Danielle acknowledged while testifying, a one-year-old child, the age of the twins, "like[s] to pick things up and put it in their mouth." *Tr.* at 38. Rujuwa's claim that the evidence did not support a determination that the apartment's conditions endangered the children's health is a request for us to reweigh the evidence, which we cannot do. *Sanders v. State*, 734 N.E.2d 646, 650 (Ind. Ct. App. 2000) (we neither judge credibility of witnesses nor reweigh evidence), *trans. denied*.

[14] On review, our inquiry is limited to whether sufficient evidence was presented from which the fact-finder could have found the defendant guilty beyond a reasonable doubt. *Cleasant*, 779 N.E.2d at 1262. While the evidence did not demand a finding that the conditions endangered the children's health, we cannot say that the evidence was insufficient to permit that determination. Accordingly, we find that the State presented sufficient evidence to support Rujuwa's three convictions for neglect of a dependent.

[15] Affirmed.

[16] Riley, J., and Pyle, J., concur.