

ATTORNEYS FOR APPELLANT

Andrew M. Barker
Stephenie K. Gookins
Campbell Kyle Proffitt LLP
Noblesville, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Justin Roebel
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Kirsten L. Phillips,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff* | February 20, 2015<br><br>Court of Appeals Case No.<br>29A02-1407-CR-503<br><br>Appeal from the Hamilton Superior Court<br>The Honorable Daniel L. Pfleging, Judge<br>Case No. 29D02-1306-FA-5012 |

**Crone, Judge.**

## Case Summary

[1]     Five-month-old C.T. tragically died after Kirsten L. Phillips put him down for a nap inside a broken portable crib at the home daycare where she worked. Following a jury trial, Phillips was convicted of class C felony reckless homicide and class D felony involuntary manslaughter. Phillips appeals,

asserting that the trial court abused its discretion in admitting certain evidence at trial. Phillips also asserts that the State presented insufficient evidence to support her convictions. We conclude that the trial court did not abuse its discretion in admitting evidence and that sufficient evidence supports Phillips's reckless homicide conviction. We need not address the sufficiency of the evidence of her lesser conviction for involuntary manslaughter because we determine sua sponte that her dual convictions for reckless homicide and involuntary manslaughter violate double jeopardy principles. Accordingly, we affirm Phillips's reckless homicide conviction and vacate her involuntary manslaughter conviction.

## Facts and Procedural History

[2]     The facts most favorable to the verdicts indicate that in January 2013, twenty-one-year-old Phillips lived with her mother, Stacey Cox, in Carmel. Cox ran a daycare out of the home, and Phillips had been assisting her mother with the care of the children at the daycare for about six months. Each day, "[a]bout six to nine children" were at the daycare. Tr. at 604. Five-month-old C.T. and his sister were two of the children cared for by Cox and Phillips. C.T.'s mother was a cousin by marriage of Cox. C.T.'s grandparents paid $130 per week for the daycare services.

[3]     On January 24, 2013, C.T.'s grandmother dropped him and his sister off at the daycare around 6:30 a.m. Phillips was asleep at the time, but woke up around 8:00 a.m. and began "playing with all the kids" at the daycare shortly thereafter. *Id*. at 641. At that time, C.T. was awake in a bouncy seat and

appeared to be "pretty normal." *Id*. at 641-42. Phillips helped her mother care for the children that morning, and around 11:45 a.m., Phillips made a spaghetti lunch for the older children, cleaned them up, and changed all of their diapers. "Not too long after that[,]" Phillips fed C.T. about eight ounces of formula and burped him. *Id*. at 646. Because it was naptime for C.T., Phillips placed a folded "big queen sized blanket" inside one of the portable cribs in the home and laid C.T. on his back on top of the blanket inside the portable crib.[1] Phillips knew that this particular portable crib was broken as she had previously observed that it was "like, bent in" in the bottom. *Id*. at 648. Phillips put another blanket over C.T. and exited the room. Phillips left the residence at 12:20 p.m. to meet her father for lunch.

[4]  Shortly after 3:00 p.m., Cox went to check on C.T. and found him unresponsive in the portable crib. Cox called 911. Paramedics and firefighters who arrived on the scene found that C.T. had no pulse and was cold to the touch. His body was stiff and he had "blotchy, purple lividity" on his face and his lower extremities. *Id*. at 326. C.T. was transported to the hospital, and after all attempts to revive him proved unsuccessful, he was pronounced dead. The

---

[1] At trial and on appeal, both parties refer to the portable crib as a "Pack 'n Play." Although this term is often used to describe any portable crib or foldable play-yard regardless of the manufacturer, Pack 'n Play® is a brand name and registered trademark of Graco Children's Products, Inc. It is unclear from the record whether the crib at issue was actually a Pack 'n Play or another brand of portable crib. Thus, we will refer generally to the device as a portable crib.

neonatologist who examined and attempted to revive C.T. concluded that C.T. had likely been in cardiac arrest for a long time before arriving at the hospital.

[5] The State charged Phillips with class A felony neglect of a dependent resulting in death, class C felony reckless homicide, and class D felony involuntary manslaughter. Prior to trial, the State filed a motion to dismiss the neglect of a dependent charge, which was granted by the trial court. The case proceeded to trial on the remaining two counts and the jury found Phillips guilty as charged. The trial court entered judgment of conviction on both verdicts. This appeal ensued.

# Discussion and Decision

## Section 1 – The trial court did not abuse its discretion when it admitted evidence.

[6] We first address Phillips's contention that the trial court abused its discretion in admitting into evidence, over her objection, photographs of the warning labels that were affixed to the broken portable crib retrieved from the daycare. Among other statements, the labels contained statements from the manufacturer instructing the user to never use the crib if any part of the crib was broken and to never use any additional padding inside the crib. The labels also contained a warning that infants can suffocate on soft bedding and that failure to follow the product warnings could result in serious injury or death. Phillips argues that the photographs of the warning labels constituted inadmissible

hearsay and should have been excluded from evidence. The State responds that the labels were not hearsay, and we agree.[2]

[7] A trial court has broad discretion in ruling on the admission or exclusion of evidence. *Palilonis v. State*, 970 N.E.2d 713, 726 (Ind. Ct. App. 2012), *trans. denied*. An abuse of discretion occurs when the trial court's ruling is clearly against the logic, facts, and circumstances presented. *Id*. When reviewing the admissibility of evidence, we do not reweigh evidence, and we consider conflicting evidence most favorable to the trial court's ruling. *Meredith v. State*, 906 N.E.2d 867, 869 (Ind. 2009).

[8] Hearsay is a statement made out of court that is offered into evidence to prove the truth of the matter asserted. Ind. Evidence Rule 801(c). When an out-of-court statement is challenged as hearsay, we must first determine whether the statement asserts a fact susceptible of being true or false. *Stewart v. State*, 945 N.E.2d 1277, 1287 (Ind. Ct. App. 2011), *trans. denied*. If the statement contains no such assertion, it cannot be hearsay and an objection to the evidence should be overruled. *Id*. If the statement does contain an assertion of fact, we consider the evidentiary purpose of the proffered statement to determine if it is to prove the fact asserted. *Id*. If the statement is offered to prove the fact asserted, the statement is inadmissible unless a hearsay exception applies. *Id*. Under the

---

[2] The State alternatively argues that the labels were admissible pursuant to an exception to the hearsay rule, Indiana Evidence Rule 803(17). Because we conclude that the labels were not hearsay, we do not address the applicability of this exception.

circumstances presented here, we conclude that the statements on the labels did not constitute hearsay.

[9]     First, we note that the majority of the statements on the warning labels were along the lines of a directive or an imperative, instructing the crib's user to "never" do certain things while using the product. State's Exs. 21-23. While we acknowledge that the "grammatical form of an utterance" does not ultimately govern whether it is hearsay, *see Stewart*, 945 N.E.2d at 1287, we agree with the State that the statements here contain no assertions of fact. Because these instructive statements do not assert facts susceptible of being true or false, they are not hearsay. *See Cardin v. State*, 540 N.E.2d 51, 54 (Ind. Ct. App. 1989) ("Imperative declarations, such as orders or instructions, which by their nature can neither be true nor false, cannot be offered for their truth."), *trans. denied*.

[10]    As for the declarative statements on the labels that infants can suffocate on soft bedding and that failure to follow the product warnings could result in serious injury or death, the evidentiary purpose of these proffered statements was not to prove the facts asserted. Rather, the State offered the photographs of the labels to establish what information was presented and available to Phillips when using the portable crib and her resultant state of mind. Specifically, the State argued to the jury that "there are these giant warning labels" on the portable crib that "you see immediately" that would have alerted Phillips to the information contained on the labels, irrespective of the truth of that information. Tr. at 786. Because the statements contained on the labels were not offered for the truth of the matter asserted, they were not hearsay.

Accordingly, the trial court did not abuse its discretion in admitting the photographs into evidence.

## Section 2 – Sufficient evidence supports the reckless homicide conviction.

We turn now to address the sufficiency of the evidence to support Phillips's reckless homicide conviction. Upon review of a claim of insufficient evidence to sustain a conviction, we consider only the probative evidence and reasonable inferences supporting the verdict. *Meehan v. State*, 7 N.E.3d 255, 257 (Ind. 2014) (citing *Drane v. State*, 867 N.E.2d 144, 146-47 (Ind. 2007)). It is the role of the factfinder, not that of this Court, to assess witness credibility and weigh the evidence to determine whether it is sufficient to support a conviction. *Id*. We will affirm the conviction unless no reasonable factfinder could find the elements of the crime proven beyond a reasonable doubt. *Id*. It is unnecessary for the evidence to overcome every reasonable hypothesis of innocence. *Id*. Rather, the evidence is sufficient if an inference may reasonably be drawn from it to support the verdict. *Id*.

The version of Indiana Code Section 35-42-1-5 in effect at the time Phillips committed her crime provided that a person who recklessly kills another human being commits reckless homicide, a class C felony. Conduct is reckless if the person engaged in that conduct "in plain, conscious, and unjustifiable disregard of harm that might result and the disregard involves a substantial deviation from acceptable standards of conduct." Ind. Code § 35-41-2-2(c). As charged, to convict Phillips of this crime, the State was required to prove that Phillips

recklessly killed C.T. "by providing an unsafe environment." Appellant's App. at 7.

[13] The unrefuted evidence presented at trial established that, on the day in question, Phillips personally fed C.T. a bottle and put him down for his nap in the broken portable crib. She knew that the crib was broken and that it was "like, bent in" at the bottom. Tr. at 648. She placed a folded "big queen size blanket" in the bottom of the portable crib and then placed C.T. on his back on top of that blanket. *Id.* at 647. She put another blanket over C.T., left the room, and then left the residence. A few hours later, Phillips's mother discovered the unresponsive infant and called 911. C.T. was pronounced dead shortly after being transported to the hospital. An autopsy of C.T. determined that he died of Sudden Unexpected Infant Death with a contributing factor of an unsafe sleep environment. The forensic pathologist who performed the autopsy opined that C.T. died after "he rolled over into the depression within the broken" portable crib. *Id.* at 543.

[14] Phillips first argues that there is insufficient evidence that she technically "provided" the unsafe sleep environment because the broken portable crib was the property of her mother, Cox, and that "Stacey Cox Daycare" provided the portable crib for Phillips "to use and put C.T. in it." Appellant's Br. at 7. We are not persuaded by this nuanced argument. Phillips's act of placing C.T. for a nap on top of a large blanket inside the broken portable crib was sufficient evidence from which the jury could reasonably infer that Phillips was the person who provided the unsafe sleep environment that caused C.T.'s death.

[15] Phillips maintains that there is also insufficient evidence that she acted recklessly. Specifically, she claims that the State presented no evidence to suggest that she was formally trained in child care or otherwise should have known that placing C.T. down for a nap in the broken portable crib along with additional bedding could result in harm to C.T.

[16] Again, we are not persuaded that the jury got it wrong. The record indicates that Phillips was a twenty-one-year-old adult who had been caring for both young children and infants at her mother's daycare for at least six months. At the time she placed C.T. in the portable crib for a nap, Phillips knew that the crib was broken and that a portion of the bottom was caved in. As noted above, the portable crib was labeled with multiple warnings instructing Phillips that the product should never be used if there are any broken parts and should never be used with additional padding. Phillips was also warned that serious injury or death could result if such instructions were disregarded. Under the circumstances presented, a reasonable jury could infer that Phillips was aware of the potential for harm and that she acted in conscious disregard of that harm when she placed C.T. for a nap in the broken crib with additional padding. The evidence was sufficient to support Phillips's conviction for reckless homicide and we affirm that conviction.

## Section 3 – Phillips's reckless homicide and involuntary manslaughter convictions violate double jeopardy principles.

[17] As for Phillips's involuntary manslaughter conviction, the version of Indiana Code Section 35-42-1-4(e) in effect at the time Phillips committed her crime

provided that if: (1) a child care provider recklessly supervises a child; and (2) the child dies as a result of the child care provider's reckless supervision; the child care provider commits class D felony involuntary manslaughter. A "child care provider" means a person who provides child care in or on behalf of a child care center or a child care home. Ind. Code § 35-42-1-4(a). A "child care home" is defined as

> a "residential structure in which least six (6) children (not including the children for whom the provider is a parent, stepparent, guardian, custodian, or other relative or any child who is at least fourteen (14) years of age and does not require child care) at any time receive child care from a provider:
>
> > (1) while unattended by a parent, legal guardian, or custodian;
> >
> > (2) for regular compensation; and
> >
> > (3) for more than four (4) hours but less than twenty-four (24) hours in each of ten (10) consecutive days per year, excluding intervening Saturdays, Sundays, and holidays.

Ind. Code § 12-7-2-28.6. As charged, to convict Phillips of this crime, the State was required to prove that Phillips, being a childcare provider, recklessly supervised C.T., a child in her care, and C.T. died as a result of that reckless supervision.

[18] Phillips alleges that the State failed to present adequate evidence to establish that she was a child care provider and that her mother's business for which she worked was a child care home as defined by statute. However, we need not address these concerns due to a dispositive conclusion on double jeopardy grounds that we reach regarding Phillips's dual convictions for reckless

homicide and involuntary manslaughter. Although Phillips does not raise double jeopardy on appeal, we have previously stated that double jeopardy issues ought to be raised sua sponte because such violations implicate a defendant's fundamental rights. *Harrison v. State*, 901 N.E.2d 635, 643 (Ind. Ct. App. 2009), *trans. denied*.

[19] The Indiana Constitution provides, "No person shall be put in jeopardy twice for the same offense." Ind. Const. art. 1, § 14. "Indiana's Double Jeopardy Clause … prevent[s] the State from being able to proceed against a person twice for the same criminal transgression." *Richardson v. State*, 717 N.E.2d 32, 49 (Ind. 1999). "[T]wo or more offenses are the 'same offense' in violation of Article I, Section 14 of the Indiana Constitution, if, with respect to *either* the statutory elements of the challenged crimes *or* the actual evidence used to convict, the essential elements of one challenged offense also establish the essential elements of anther challenged offense." *Id*.

[20] "In addition to the instances covered by *Richardson*, 'we have long adhered to a series of rules of statutory construction and common law that are often described as double jeopardy, but are not governed by the constitutional test set forth in *Richardson*.'" *Guyton v. State*, 771 N.E.2d 1141, 1143 (Ind. 2002) (quoting *Pierce v. State*, 761 N.E.2d 826, 830 (Ind. 2002)). One of these categories prohibits "conviction and punishment for a crime which consists of the very same act as another crime for which the defendant has been convicted and punished." *Id*.; *see also Richardson*, 717 N.E.2d at 55 (Sullivan, J., concurring).

"In crimes 'such as murder, manslaughter, battery and reckless homicide, the gravamen of the offense is causing the death or injury of another person, i.e., the result is part of the definition of the crime.'" *Mathews v. State*, 849 N.E.2d 578, 582 (Ind. 2006) (quoting *Kelly v. State*, 527 N.E.2d 1148, 1155 (Ind. Ct. App. 1988), *aff'd* 539 N.E.2d 25 (Ind. 1989)). Both of Phillips's convictions were based on the death of C.T. Regardless of the statutory elements of the crimes or the actual evidence used to convict, at the end of the day a defendant cannot be convicted twice for causing the death of one individual. *See Sanders v. State*, 734 N.E.2d 646, 652 (Ind. Ct. App. 2000) (holding that convictions for involuntary manslaughter and neglect of a dependent resulting in death contravened double jeopardy principles because a defendant cannot be convicted twice for one death), *trans. denied*. Accordingly, Phillips's dual convictions for reckless homicide and involuntary manslaughter cannot stand.

"When two convictions are found to contravene double jeopardy principles, a reviewing court may remedy the violation by reducing either conviction to a less serious form of the same offense if doing so will eliminate the violation." *Richardson*, 717 N.E.2d at 54. If it will not, then the conviction "with the less severe penal consequences" must be vacated. *Id*. at 55. The only remedy available here is for us to vacate Phillips's conviction for class D felony involuntary manslaughter.

Affirmed in part and vacated in part.

Friedlander, J., and Kirsch, J., concur.