# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Apr 17 2017, 5:57 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Anthony S. Churchward
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Tyler G. Banks
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Chad M. Sutton, *Appellant-Defendant,* | April 17, 2017 |
| | Court of Appeals Case No. 02A03-1611-CR-2638 |
| *v.* | Appeal from the Allen Superior Court The Honorable Frances C. Gull, Judge |
| State of Indiana, *Appellee-Plaintiff* | Trial Court Cause No. 02D05-1605-F6-567 |

**Bradford, Judge.**

# Case Summary

[1] In April of 2016, Appellant-Defendant Chad Sutton appeared uninvited at the home of Brigitte O'Connell, with whom he had been romantically involved. Sutton stayed in O'Connell's house for over two hours despite repeated requests to leave and the fact that there were valid protective and no-contact orders in place. The State charged Sutton with two counts of Level 6 felony invasion of privacy, one each for violating the protective and no-contact orders. Sutton was found guilty as charged, and the trial court sentenced him to two and one-half years of incarceration for each conviction, to be served concurrently. Sutton contends that his two convictions violate Indiana constitutional prohibitions against double jeopardy and that his sentence is inappropriately harsh. Because we agree with Sutton's first argument but not his second, we reverse in part, remand with instructions to vacate invasion of privacy count II and affirm his two-and-one-half-year sentence.

# Facts and Procedural History

[2] As of early 2016, Sutton and O'Connell had been in a relationship for over seven years and had a daughter together. On January 5, 2016, O'Connell petitioned for an *ex parte* protective order, which was provisionally granted that day. On January 28, 2016, the protective order was made permanent after a hearing that Sutton attended. Meanwhile, on January 6, 2016, Sutton pled guilty to domestic battery of O'Connell. A no-contact order was issued pursuant to Sutton's guilty plea. On January 27, 2016, Sutton was charged

with a single count of invasion of privacy for violating the protective and no-contact orders. On March 5, 2016, Sutton pled guilty to invasion of privacy and another no-contact order was issued.

[3]     On April 5, 2016, O'Connell was asleep in her Allen County house while her children watched cartoons in the living room. At approximately 8:00 a.m., O'Connell's son woke her and told her that Sutton was in the house. O'Connell found Sutton standing in her living room and told the children to go to another room. When O'Connell asked Sutton what he was doing in her house, Sutton claimed that the answer to a math problem that O'Connell had posted on Facebook was her address, which he took as an invitation to visit. O'Connell believed that Sutton was "high[,]" and he admitted that he had taken methamphetamine the day before. Tr. p. 33.

[4]     O'Connell did not call the police because her telephone was in her bedroom and she feared Sutton's reaction "to anything that [she] did." Tr. p. 34. Sutton "went on for some time about the people trying to get to him through his phone and that he believed some stripper was both a spy for the police and [O'Connell's] lesbian lover[.]" Tr. p. 34. O'Connell did not, in fact, know the woman Sutton was speaking of. O'Connell described Sutton as "very tense [and] very paranoid [and] was just upset about a lot of things that weren't even real." Tr. p. 35. At least a dozen times, O'Connell told Sutton that he needed to leave, and while Sutton would begin to leave, he would return and begin talking again.

[5] After Sutton had been in O'Connell's house for approximately two hours, he began pacing back in forth in front of the fireplace, describing the knife he was carrying, and telling O'Connell about how he was going to stab and kill her boyfriend and her boyfriend's father, Robert Bowers. A few minutes later, Bowers happened to pull into the driveway. O'Connell met Bowers outside and told him that he needed to leave because Sutton wanted to kill him. After approximately fifteen minutes, Sutton left because he believed Bowers had called the police.

[6] On May 10, 2016, the State charged Sutton with two counts of Level 6 felony invasion of privacy (enhanced to felonies by virtue of his prior conviction for invasion of privacy), count I for violation of the protective order and count II for violating the no-contact order. On September 20, 2016, a jury found Sutton guilty of two counts of invasion of privacy and Sutton pled guilty to having a prior conviction, which enhanced both convictions to Level 6 felonies. On October 19, 2016, the trial court sentenced Sutton to two and one-half years of incarceration for each conviction, both sentences to be served concurrently.

## Discussion and Decision

### I. Double Jeopardy

[7] Sutton was charged with, and convicted of, violating subsections 2 and 6 of Indiana Code section 35-46-1-15.1:

> A person who knowingly or intentionally violates:
>
> …

> (2) an ex parte protective order issued under IC 34-26-5 (or, if the order involved a family or household member, an emergency order issued under IC 34-26-2 or IC 34-4-5.1 before their repeal); [or]
>
> ….
>
> (6) a no contact order issued as a condition of probation;
>
> ….
>
> commits invasion of privacy, … a Level 6 felony if the person has a prior unrelated conviction for an offense under this section.

Ind. Code § 35-46-1-15.1.

[8] Sutton contends that his two convictions for invasion of privacy violate Indiana constitutional prohibitions against double jeopardy, specifically, the "actual evidence" test. In *Richardson v. State*, 717 N.E.2d 32 (Ind. 1999), the Indiana Supreme Court held "that two or more offenses are the 'same offense' in violation of Article I, Section 14 of the Indiana Constitution, if, with respect to … the actual evidence used to convict, the essential elements of one challenged offense also establish the essential elements of another challenged offense." *Id*. at 49-50. The *Richardson* court stated the actual evidence test as follows:

> To show that two challenged offenses constitute the "same offense" in a claim of double jeopardy, a defendant must demonstrate a reasonable possibility that the evidentiary facts used by the fact-finder to establish the essential elements of one offense may also have been used to establish the essential elements of a second challenged offense.

*Id*. at 53.

[9] The actual evidence test does not help Sutton in this case. One of his convictions required proof of an existing protective order while the other

required proof of a no-contact order. We conclude that there is no reasonable possibility that the jury relied on the same evidentiary facts to convict Sutton of both counts of invasion of privacy.

[10] That said, we conclude that Sutton *is* entitled to relief pursuant to another rule of Indiana law:

> "In addition to the instances covered by *Richardson*, 'we have long adhered to a series of rules of statutory construction and common law that are often described as double jeopardy, but are not governed by the constitutional test set forth in *Richardson*.'" *Guyton v. State*, 771 N.E.2d 1141, 1143 (Ind. 2002) (quoting *Pierce v. State*, 761 N.E.2d 826, 830 (Ind. 2002)). One of these categories prohibits "conviction and punishment for a crime which consists of the very same act as another crime for which the defendant has been convicted and punished." *Id.*; *see also Richardson*, 717 N.E.2d at 55 (Sullivan, J., concurring).

*Phillips v. State*, 25 N.E.3d 1284, 1291 (Ind. Ct. App. 2015).

[11] The State produced evidence of only one act that could have violated the protective and no-contact orders—Sutton's visit to O'Connell's house on the morning of April 5, 2016. Although Sutton's visit lasted approximately two hours, it was, in fact, only one act, for which he can only be punished once. Consequently, we remand with instructions to vacate Sutton's conviction for count II, invasion of privacy.

## II. Appropriateness of Sentence

[12] We "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in

light of the nature of the offense and the character of the offender." Ind. Appellate Rule 7(B). "Although appellate review of sentences must give due consideration to the trial court's sentence because of the special expertise of the trial bench in making sentencing decisions, Appellate Rule 7(B) is an authorization to revise sentences when certain broad conditions are satisfied." *Shouse v. State*, 849 N.E.2d 650, 660 (Ind. Ct. App. 2006), *trans. denied* (citations and quotation marks omitted). "A person who commits a Level 6 felony (for a crime committed after June 30, 2014) shall be imprisoned for a fixed term of between six (6) months and two and one-half (2½) years, with the advisory sentence being one (1) year." Ind. Code § 35-50-2-7(a). As mentioned, the trial court sentenced Sutton to a maximum term of two and one-half years of incarceration for each of his invasion-of-privacy convictions, to be served concurrently, which means that his new sentence is the same length even though one of his convictions must be vacated.

[13]     The nature of Sutton's offense justifies an enhanced sentence. The conviction in this case represents the third conviction Sutton received in a few months for crimes against O'Connell, following his January or 2016 conviction for domestic battery and his March of 2016 conviction for invasion of privacy. In early April of 2016, Sutton appeared uninvited at O'Connell's house (when her two children were also there) and stayed for over two hours despite being asked to leave over a dozen times. Sutton was likely under the influence of illegal drugs. Sutton also talked about how he had a knife and was going to stab O'Connell's boyfriend and her boyfriend's father, the latter in the neck. Sutton

also threatened to burn down and/or tear down O'Connell's house. Sutton's actions went far beyond what is necessary to prove invasion of privacy, and therefore justify an enhanced sentence.

[14] Sutton's character also justifies an enhanced sentence. At the age of thirty-five, Sutton's lengthy criminal history speaks poorly of his character, to say the least. Sutton has a juvenile adjudication for what would be, if committed by an adult, battery. As an adult, Sutton has prior convictions for Class C felony burglary; Class D felony possession of marijuana, hash oil, or hashish; three counts of Class A misdemeanor operating a vehicle while suspended; Class A misdemeanor marijuana possession; Class A misdemeanor paraphernalia possession; Class A misdemeanor domestic battery; Class A misdemeanor invasion of privacy; Class B misdemeanor disorderly conduct; and Class C misdemeanor operating a vehicle with blood alcohol concentration of at least 0.08 but less than 0.15. Sutton has had his criminal probation revoked, a suspended sentence revoked three times, and a suspended sentence modified twice. Sutton's criminal history shows significant unaddressed issues with substance abuse and violence, including the recent spate of crimes committed against O'Connell. Despite Sutton's frequent contacts with the criminal justice system, he has not chosen to reform himself. Sutton has failed to establish that his maximum two-and-one-half-year sentence is inappropriate in light of the nature of his offense and his character.

[15] The judgment of the trial court is affirmed in part, reversed in part, and remanded with instructions to vacate count II.

Najam, J., and Riley, J., concur.