## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Feb 28 2018, 8:36 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Ryan P. Dillon
Maritza K. Webb
Dillon Legal Group, P.C.
Franklin, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Kelly A. Loy
Supervising Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Nansee J. Crawford,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

February 28, 2018

Court of Appeals Case No.
55A05-1708-CR-1880

Appeal from the Morgan Superior
Court 2

The Honorable Brian H. Williams,
Judge

Trial Court Cause No.
55D02-1611-F6-1782

**Mathias, Judge.**

[1] Following a jury trial in Morgan Superior Court, Nansee J. Crawford ("Crawford") was convicted of Level 6 felony strangulation and two counts of

Level 6 felony intimidation. Crawford appeals and presents two issues, which we consolidate and restate as whether the State presented evidence sufficient to support Crawford's convictions. We hold that there was sufficient evidence to support all of Crawford's convictions. However, we conclude *sua sponte* that Crawford's convictions for two counts of intimidation based on the same threat constitute impermissible double jeopardy. Accordingly, we affirm in part, reverse in part, and remand.

## Facts and Procedural History

[2] At some point during the summer of 2016, Dora Summers ("Summers") was looking for someone to help care for her elderly mother. Summers posted a message to her Facebook page that she was looking for a caregiver and received a response from Crawford, with whom Summers was already acquainted. Thereafter, Crawford began to work part-time, three days a week, as a caregiver for Summers's mother.

[3] Toward the end of September, Summers's mother was hospitalized. In mid-October, Summers expected her mother to be released from the hospital and attempted to contact Crawford to see if she could resume her job as a caregiver. Crawford was not terribly responsive to Summers's offers, claiming to be sick or asleep, and she finally stopped responding at all. Summers then contacted the agency through which she had hired Crawford and informed them that Crawford had not responded. This agency then provided Summers with another caregiver who could watch her mother four days a week.

[4] Relations between Crawford and Summers soured after this. Although they did not see each other, they exchanged online messages in which Crawford expressed anger over being removed as Summers's mother's caregiver and threatened Summers. Summers eventually blocked Crawford from contacting her on Facebook.

[5] On November 20, 2016, Summers moved her mother to a nursing home. She became upset as she packed her mother's belongings and decided to run to the store to pick up cleaning supplies. On her way to the store, however, Summers decided to stop by the local Veterans of Foreign Wars post ("VFW") to have a drink at the bar and relax. After receiving her second glass of wine, Summers noticed Crawford and her husband enter the club and sit at the other end of the bar. Shortly thereafter, Summers went to the restroom.

[6] When Summers went to the restroom, she did not notice anyone else inside and entered a stall. Inside the stall, she heard the restroom door close and looked through the crack in the stall door and saw that Crawford had entered the restroom. Summers asked Crawford if she wanted to talk, and, when she exited the stall, the two spoke. Crawford told Summers that she thought that Summers had gotten her removed as her mother's caregiver. Summers responded that this had been the agency's decision, not hers. Crawford was angry, and Summers became upset and started to weep and walk away. At this point, Crawford said, "don't cry on me, bitch[.] I'll f**king kill you." Jury Trial Tr. p. 102. Crawford pushed Summers up against the restroom wall, blocking her from leaving. Crawford also put at least one of her hands on Summers's neck, and squeezed,

which "strangled" and "choked" her. *Id*. at 102, 128. At this point, Julie Lanham ("Lanham"), a bartender at the VFW, came in the restroom and separated the two.

[7]     Summers left the restroom and sat back down at the bar. Lanham and Crawford then left the restroom, and as they walked by Summers, Crawford again threatened her.[1] Summers texted her son and informed him of what had happened, and her son told her to call the police to report the attack. Summers then called the police. Summers also noticed that Crawford's attack had left her with a scratch running down the left side of her face towards her neck, which was bleeding. Her neck was also red from where Crawford had grabbed her.

[8]     Mooresville Police Department Officer Lindsay Hayden ("Officer Hayden") responded to a report of a possible battery at the VFW and arrived on the scene, where she spoke with Summers. Summers was "[v]ery distraught [and] crying." *Id*. at 147. Officer Hayden also observed the bleeding scratch on Summers's face and neck and the redness on her neck. Officer Hayden also spoke with Crawford, who was agitated and was "[n]ot happy to be speaking with [police] officers." *Id*. at 151. Crawford claimed that she and Summers had engaged in a "civil conversation" in the restroom. *Id*. at 150. She also claimed, unprompted, that Summers had scratched her own face. Since Officer Hayden had not

---

[1] Summers testified, "And when she passes me, she threatens me again and says, if I catch . . when I catch you outside of this place, your ass is .. I don't know exactly how she said that, but she threatened me again." Jury Trial Tr. p. 103.

mentioned any injuries, she thought this statement odd. Crawford denied having choked Summers.

[9]     Mooresville Police Officer David Schultz ("Officer Schultz") also responded to the scene and spoke with the bartender, Lanham. According to Officer Schultz, Lanham told him that she had seen Summers and Crawford go into the restroom and knew they had "issues with each other." *Id*. at 182. Lanham then heard a commotion and went into the restroom where she saw Crawford with her hands around Summers's neck and separated the two.[2] Officer Hayden ultimately arrested Crawford and took her to jail.

[10]    As a result of this incident, the State charged Crawford on November 21, 2016 as follows: Count 1, Level 6 felony strangulation; Count 2, Level 6 felony intimidation; Count 3, Level 6 felony intimidation; Count 4, Class A misdemeanor battery; and Count 5, Class B misdemeanor disorderly conduct. A jury trial was held on May 2, 2017, at the conclusion of which the jury found Crawford guilty as charged. At a sentencing hearing held on July 20, 2017, the trial court determined that the two misdemeanor counts "merged" into the strangulation conviction and entered judgment of conviction only on the three felony counts. The court then imposed concurrent advisory sentences of one and one-half years on each count, with all but six days suspended to probation. The trial court also noted that, if Crawford successfully completed probation, it

---

[2] Lanham testified as a witness for the defense and denied having told Officer Schultz that she witnessed Crawford attacking Summers. She instead testified that she only observed Crawford yelling at Summers.

would "consider and likely grant an alternative misdemeanor conviction in these cases." Sentencing Tr. p. 19. Crawford now appeals.

# Discussion and Decision

Crawford claims on appeal that the State failed to present evidence sufficient to support all three of her felony convictions. When reviewing a claim that the evidence is insufficient to support a conviction, we neither reweigh the evidence nor judge the credibility of the witnesses. *Harrison v. State*, 32 N.E.3d 240, 247 (Ind. Ct. App. 2015), *trans. denied*. We instead respect the exclusive province of the jury to weigh any conflicting evidence. *Id*. We consider only the probative evidence supporting the verdict and any reasonable inferences which may be drawn from this evidence, and we will affirm if the probative evidence and reasonable inferences drawn therefrom could have allowed a reasonable trier of fact to find the defendant guilty beyond a reasonable doubt. *Id*.

## A. Strangulation

The statute defining the crime of strangulation provides in relevant part:

> A person who, in a rude, angry, or insolent manner, knowingly
> or intentionally:
>
> > (1) applies pressure to the throat or neck of another person;
>
> > \* \* \*
>
> in a manner that impedes the normal breathing or the blood
> circulation of the other person commits strangulation, a Level 6
> felony.

Ind. Code § 35-42-2-9(b) (2014).[3]

[13]     Thus, to convict Crawford of Level 6 felony strangulation, the State had to prove that she knowingly or intentionally applied pressure to the throat or neck of Summers in a rude, angry, or insolent manner, and in such a manner that impeded Summers's normal breathing or blood circulation. Crawford claims that there is no evidence that Summers's normal breathing or blood circulation was impeded by her grabbing Summers's throat. We disagree.

[14]     The evidence favorable to the jury's verdict reveals that Crawford was angry with Summers, threatened to kill her, pushed her up against a wall, grabbed her by the throat, and squeezed her neck. Crawford claims that there was no evidence that this interfered with Summers's breathing. But Summers described what Crawford did to her as being "strangled" and "choked." Jury Trial Tr. pp. 102, 128. Moreover, Crawford squeezed Summers's neck with enough force that it was still red when the police arrived. From this, the jury could reasonably infer that Crawford squeezed Summers's throat with enough force to impede her normal breathing. *See Perry v. State*, 956 N.E.2d 41, 61 (Ind. Ct. App. 2011) (concluding that there was sufficient evidence to support defendant's conviction for strangulation, and therefore there were no double jeopardy issue concerns on retrial, where victim had abrasions on her neck and

---

[3] We cite to the version of the statute in effect at the time of the commission of the offense. The statute has subsequently been amended in a manner that does not affect the current case, though the above-cited provision is now delineated as subsection (c). *See* P.L. 252-2017 § 11 (effective July 1, 2017).

stated that she had been "strangled" and that defendant grabbed her around the neck).[4]

[15] Crawford complains that Officer Schultz's testimony regarding what Lanham told him she saw was hearsay. However, Crawford made no hearsay objection to this testimony at trial and does not claim evidentiary error on appeal.[5] When reviewing the sufficiency of the evidence, "'[o]therwise inadmissible hearsay evidence may be considered for substantive purposes and is sufficient to establish a material fact at issue when the hearsay evidence is admitted without a timely objection at trial.'" *Marcum v. State*, 725 N.E.2d 852, 863 (Ind. 2000) (quoting *Humphrey v. State*, 680 N.E.2d 836, 840 (Ind. 1997)).

[16] Crawford also notes that Officer Schultz did not record his interview of Lanham. Although this might be the better practice, and we encourage such recordings as they eliminate any question regarding what a witness said, there is no requirement that such interviews be recorded. The failure to record Lanham's statement might have been relevant to the weight to be given to

---

[4] The State notes that Summers apparently demonstrated to the jury her reaction to what Crawford did to her, testifying, "I remember she did it, and I kind of went . . and I was thinking what was I going to do." Jury Trial Tr. p. 102. In response to Crawford's motion for a directed verdict, the prosecuting attorney described Summers's description as "a type of gasping." *Id*. at 197. On appeal, Crawford claims that there is no support for the prosecutor's characterization in the transcript. We do not have access to any audio recording of the testimony and are unable to judge the State's characterization of Summers's testimony. Still one might reasonably infer that when Summers testified "I kind of went . . ." she demonstrated her reaction to being grabbed by the throat. However, even if we agreed with Crawford that the prosecutor's characterization of Summers's testimony was unsupported, the remaining evidence, and the reasonable inferences to be drawn therefrom, are sufficient to support Crawford's conviction for strangulation.

[5] Crawford's trial counsel did note the inconsistency between Officer Schultz's testimony regarding what Lanham told him and Lanham's actual testimony as a defense witness. But the jury was not required to credit Lanham's trial testimony over Officer Schultz's testimony regarding what Lanham told him on the night of the incident.

Officer Schultz's testimony, but we may not reweigh evidence on appeal. *See Harrison*, 32 N.E.3d at 247.

*B. Intimidation*

[17] Crawford also claims that the State failed to produce evidence sufficient to support either of her convictions for Level 6 felony intimidation. The statute defining the crime of intimidation provides in relevant part:

> (a) A person who communicates a threat to another person, with the intent:
>
>> (1) that the other person engage in conduct against the other person's will; [or]
>>
>> (2) that the other person be placed in fear of retaliation for a prior lawful act;
>
> * * *
>
> commits intimidation, a Class A misdemeanor.

Ind. Code § 35-45-2-1. However, the offense is a Level 6 felony if the threat is to commit a forcible felony. *Id.* at § 1(b)(1)(A).

[18] With regard to her conviction for intimidation under Count 2, Crawford claims that the State failed to prove that she threatened Summers with the intent that Summers engage in conduct against her will. Again, we disagree. The State presented evidence that Crawford yelled and screamed at Summers because Crawford thought Summers had caused her termination as caregiver for Summers's mother. Summers testified that when she began to cry and attempted to walk away from Crawford, Crawford stated, "don't cry on me,

bitch[.] I'll f**king kill you." Jury Trial Tr. p. 102. She then pushed Summers up against the restroom wall, blocking her from leaving. From this, the jury could reasonably infer that Crawford threatened Summers to stop her from leaving the restroom. This is sufficient to prove that Crawford threatened Summers with the intent that Summers engage in conduct against her will, i.e., remain in the restroom.

[19] With regard to her conviction for intimidation under Count 3, Crawford claims that the State failed to prove that she threatened Summers with the intent that Summers be placed in fear of retaliation for a prior lawful act. I.C. § 35-45-2-1(a)(2). We, however, agree with the State that the jury could reasonably infer that Crawford also threatened Summers with the intent to place Summers in fear of retaliation for her role in having removed Crawford as the caregiver to Summers's mother. Indeed, this was the root of the dispute between the two women.

### C. Double Jeopardy

[20] Although we conclude that there was sufficient evidence to support Crawford's convictions, we also conclude *sua sponte* that Crawford's two convictions for intimidation are based upon the one act of threatening Summers and therefore constitute common law double jeopardy.

> In addition to the instances covered by *Richardson* [*v. State*, 717 N.E.2d 32 (Ind. 1999)], "we have long adhered to a series of rules of statutory construction and common law that are often described as double jeopardy, but are not governed by the constitutional test set forth in *Richardson*." One of these

> categories prohibits "conviction and punishment for a crime which consists of the very same act as another crime for which the defendant has been convicted and punished."

*Phillips v. State*, 25 N.E.3d 1284, 1291 (Ind. Ct. App. 2015) (internal quotations omitted) (citing *Guyton v. State*, 771 N.E.2d 1141, 1143)).

[21] Here, the State did not allege that Crawford committed two separate acts of intimidation. It simply alleged that "Nansee Crawford did communicate a threat to commit a forcible felony to Dora Summers, with the intent that said Dora Summers engage in conduct against his/her will," and that "Nansee Crawford did communicate a threat to commit a forcible felony to Dora Summers, with the intent that said Dora Summers be placed in fear of retaliation for a prior lawful act." Appellant's App. p. 4. The trial court's final instructions similarly did not distinguish between the allegations of intimidation. *Id*. at 57–58. And the prosecuting attorney's closing argument clearly referred to the one threat Crawford made to Summers in the restroom as the basis for both convictions. Jury Trial Tr. pp. 221–22.

[22] Under these facts and circumstances, we can only conclude that Crawford was convicted of two counts of intimidation based on one act—threatening to kill Summers in the restroom. Although there may have been sufficient evidence to support both of these convictions, Crawford cannot properly be convicted of both counts because they are based on the same act. *See Chappell v. State*, 966 N.E.2d 124, 132 (Ind. Ct. App. 2012) (concluding *sua sponte* that defendant's convictions for Class A felony burglary and Class B felony burglary constituted

impermissible double jeopardy where both convictions were based on the same act of breaking and entering into one house), *trans. denied*. The remedy for a double jeopardy conviction is to vacate the problem conviction. *See Orta v. State*, 940 N.E.2d 370, 377 (Ind. Ct. App. 2011) (noting that the remedy for a double jeopardy violation is to vacate one of the offenses if reducing either conviction to a less serious form of the same offense will not suffice), *trans. denied*. Here, both of the convictions at issue were for Level 6 felony intimidation. We choose to reverse Crawford's conviction on Count 3.

## Conclusion

The State presented evidence sufficient to support Crawford's convictions for strangulation and intimidation. However, because both convictions for intimidation were based on the same threat, they constitute double jeopardy. We therefore reverse Crawford's conviction for intimidation under Count 3 and remand with instructions that the trial court vacate the judgment and sentence thereon.

Affirmed in part, reversed in part, and remanded.

Najam, J., and Barnes, J., concur.